## MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
### *v.* BARRON *et al.*

2

No. 14815.   July 7, 1944.

*Grover Middlebrooks, Beck, Goodrich & Beck,* and *Louis W. Dawson,* for plaintiff in error.

*W. M. Dallas,* contra.

BELL, Chief Justice. ■ Before this policy was issued in 1925, the Court of Appeals had rendered two decisions dealing with similar policies, *Whitton* v. *American National Life Ins. Co.,* 17 *Ga. App.* 525 (87 S. E. 827), decided in 1916, and *Parten* v. *Jefferson Standard Life Ins. Co.,* 30 *Ga. App.* 245 (117 S. E. 772), decided in 1923. It is contended for the insurer that under the rulings in these cases, a recovery in the instant case was unauthorized as a matter of law, and that since these were the only Georgia decisions that had dealt with such contracts before the present policy was issued, it should be presumed that the parties here intended that their contract should be governed by these decisions.

We can not sustain this contention, for several reasons. The policy did not contain the identical language that was involved in either the *Whitton* or the *Parten* case. While the meaning of the

several clauses may be substantially the same, there is such a difference in verbiage and phraseology as to preclude any reasonable inference that the parties entered into the present contract relying upon either of those decisions as to how it should be construed. Moreover, in so far as the *Parten* case is concerned, the application expressly declared that any policy issued thereon should be governed by the laws of the State of North Carolina, and the Court of Appeals quoted and applied a decision by the Supreme Court of that State as a basis for its judgment. Lastly, it is declared in the constitution that decisions of the Supreme Court shall bind the Court of Appeals as precedents. Code, § 2-3009. This would mean, of course, that the decisions in the *Whitton* and *Parten* cases would not be controlling as to the proper construction of contracts of this nature, as against subsequent decisions by the Supreme Court, and the parties are presumed to have known of this rule. The principle invoked has been recognized and applied by this court, but it has no application in the instant case. Compare *Heist* v. *Dunlap,* 193 *Ga.* 462 (18 S. E. 2d, 837); *Parham* v. *Robins,* 197 *Ga.* 386 (29 S. E. 2d, 608).

We do not have before us a contract the language of which had been construed in a well-settled line of decisions by the Court of Appeals, with nothing to the contrary by the Supreme Court, and whether the claimed presumption could be indulged in such a situation is not determined.

■ The petitioner (the insurance company) assigned error on a ruling of the Court of Appeals as to what it would be required to show before it would be justified in discontinuing payments for total disability, where different occupations are involved; which ruling, in that court's opinion, was as follows: "In order for the insurance company to be justified in refusing to pay the total-disability payments by merely showing that the insured engaged in other occupations, it must appear: (1) that Dr. Barron never became physically able to (nor did he) resume his work as a doctor of medicine; (2) that he engaged in employments which were to him desirable, and as he might be fairly expected to follow in view of his station, circumstances, and mental and physical capabilities; and (3) that the employment produced a like remuneration or approximated the same livelihood. Under the circumstances of this case, it is necessary that the proof show all three of these essentials."

This ruling was erroneous, for the reason that it held in effect that the insured would be .totally and permanently disabled within the meaning of the policy unless he became physically able to resume his work as a doctor of medicine, or to engage in such other employment as was desirable to him and as he might be fairly expected to follow, and which produced an income or remuneration comparable with that which he had formerly received as a doctor of medicine. Total and permanent disability were thus made to depend on whether the insured regained the equivalent of substantially all of his former earning capacity, whereas under the terms of the contract the company would cease to be liable if he regained any substantial part thereof. Nor would it be true that the insured would be entirely free to accept or reject any employment according to whether it might be desirable to him. His mere personal desire should not enter into the the question.

The rule stated by the Court of Appeals, except as to desire, appears to have been deduced from the decision by this court in *Prudential Insurance Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499, 98 A. L. R. 781); and while that court, in its opinion, commended the decision, we are obliged to say that on re-examination it does not commend itself to us as being as clear as it should have been. We are satisfied, however, with the conclusion reached, and, while the decision was not concurred in by all the Justices, the general doctrine there laid down has been subsequently approved in at least one unanimous decision by this court. *Metropolitan Life Ins. Co.* v. *Johnson,* 194 *Ga.* 138 (20 S. E. 2d, 761). We will discuss the *South* case more fully later on in this opinion.

Counsel for the insurer protest strenuously against any construction that would place the instant contract in the class of occupational policies, and as to this point we are in substantial accord with the views of counsel. There is a material difference between a policy providing for payments for disability to carry on a particular occupation, and one under which such payments are to be made in case the insured becomes unable from disability to carry on or to follow any gainful work or occupation. The distinction was pointed out in Buffo *v.* Metropolitan Life Ins. Co., 277 Ill. App. 366, 368, as follows: "It appears that there are two general types of contracts of insurance of this nature, one of which provides for indemnity if the insured is disabled or prevented from

engaging in any occupation and performing any work for compensation or profit, which policy is commonly known and designated as a total-disability policy. The other kind provides for indemnity if the insured is disabled from transacting duties pertaining to the particular occupation in which the insured is then engaged. These are ordinarily styled occupational disabilities. It is generally recognized that there is a fundamental difference between these two classes of insurance and the risk that is assumed therein by the insurer. It therefore becomes necessary to revert to the provisions of the policy in question to determine which class the same comes under." See also *Williams* v. *Preferred Mutual Accident Assn.*, 91 *Ga.* 698 (17 S. E. 982) ; *Vess* v. *United Benevolent Society*, 120 *Ga.* 411 (47 S. E. 942) ; Ford *v.* United States Mutual &c. Co., 148 Mass. 153 (19 N. E. 169, 1 L. R. A. 700) ; Commercial Travelers' Mutual Accident Assn. *v.* Springsteen, 23 Ind. App. 657 (55 N. E. 973) ; 1 C. J. 465, § 166; 29 Am. Jur. 874-878, §§ 1161-1165; and cases cited in 98 A. L. R. 798.

In *Cato* v. *Ætna Life Ins. Co.*, 164 *Ga.* 392 (supra), where this court for the first time dealt with a contract similar to the one here, the policy defined total and permanent disability as one that "presumably will, during lifetime, prevent such employee [insured] from pursuing any occupation for wages or profit." In the opinion it was stated: "Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living. When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his customary and usual manner. . . Total disability does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence require him to desist, and he does in fact desist, from transacting his business. In such circumstances, total disability exists." The decision thus tended to construe the policy as one providing for occupational, as distinguished from general disability. It appeared in that case, however, that the insured was able to perform and did perform from

about 34 per cent. to more than 42 per cent. of his regular duties as a weaver, for which he received a corresponding percentage of his regular wage, and upon these facts it was held that the insured was not totally disabled. There was no question as to his ability to do other kinds of work, and therefore so much of the opinion as tended to treat the policy as one providing for an occupational disability was obiter, and did not prevent this court from laying down a different rule, as we later did in *Prudential Insurance Co. v. South,* supra. Yet we did not in the later case expressly refer to the dictum in the *Cato* case, and our failure to do so tended to to leave the law in a state of confusion as related to contracts of this class.

In the *South* case, the policy defined total disability as one that would render the insured "wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime." We said that the expressions, "any occupation" and "any work," were, on execution of the contract, "converted into words of concrete signification, and should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities." This, however, was not to hold that the policy should be treated as an occupational policy. It was simply a recognition of the rule, that where a contract is open to interpretation, all the attendant and surrounding circumstances should be considered. Among these, in such a case, would be the occupation of the insured at the time the policy was issued, and the amount that he was earning therein. Code, § 20-704 (1). That we did not construe the policy as an occupational one, should be perfectly clear from the final clause, "or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities." If the policy had been construed as one covering a particular occupation, then it would have been necessary to show only that the insured had become totally and permanently disabled to follow that particular occupation, without regard to his ability to do other kinds of work.

Nevertheless, we further said in the *South* case: "In the present case it is certain that the insured can never regain his arm; but if he should at any time after his injury so readjust himself to his handicap by education or otherwise, or find himself, from any circumstances, reasonably able to pursue his ordinary work or any work of like productivity, his alleged total and permanent disability would no longer exist, within the meaning of this policy, these terms being relative and the condition thereby described being subject to change by circumstances." It is this part of the decision that we regard as being calculated to mislead. While it did express a truism—that is to say, under the circumstances thus outlined, the insured's alleged total and permanent disability would no longer exist—still, the mere inability of the insured to perform all or substantially all of the duties of his occupation, or of such other line of endeavor as he might reasonably be expected to follow, would not amount to total disability, for he would not be totally disabled unless he was unable to perform any substantial part of the duties of such occupation or other line of endeavor as described. The statement last quoted should have contained the words which we now insert in brackets, so as to make it read as follows: "In the present case it is certain that the insured can never regain his arm; but if he should at any time after his injury so readjust himself to his handicap by education or otherwise, or find himself, from any circumstances, reasonably able to pursue his ordinary work or any work of like productivity [or any substantial part thereof], his alleged total and permanent disability would no longer exist, within the meaning of this policy, these terms being relative and the condition thereby described being subject to change by circumstances." The excerpt above quoted from the decision of the Court of Appeals would clearly imply that, before the insurer would be justified in refusing to continue total-disability payments, it should be made to appear that the insured had regained substantially his entire former earning capacity, whereas under a proper construction of the contract, it would be necessary to show only that he had regained so much thereof as would enable him to perform some *substantial part* of the duties of his profession or of such other work, if any, approximating the same livelihood, as he might be fairly expected to follow in view of his station, circumstances, and physical and mental capabilities. If he at any time overcame his dis-

ability to this extent, even though to this extent only, he would no longer be totally disabled within the meaning of the policy, but would be only partially disabled, and the insurer did not agree to become liable for mere partial disability.

While, in view of the *Cato* case, the Court of Appeals has several times made pronouncements which would seem to construe policies of this nature as covering disability to perform the duties of a particular occupation, it may be doubted whether there is any case in which the judgment should have been different, even if that court had not followed the dictum in the *Cato* case. In *Marchant v. New York Life Ins. Co.*, 42 *Ga. App.* 11 (155 S. E. 221), in which the opinion was prepared by the present writer, then a member of that court, seemingly the evidence would have authorized a finding that the insured had become unable to pursue any work or occupation which he might reasonably have been expected to follow, in view of his training, experience, and other circumstances. Again, in *New York Life Ins. Co.* v. *Thompson*, 45 *Ga. App.* 638 (165 S. E. 847), affirmed in 177 *Ga.* 898 (172 S. E. 3), it was said, "whether the insured is able to perform some other occupation is to be determined by a consideration of his education, experience, age, and natural ability;" and it was held, that, the petition having alleged that the plaintiff by loss of his leg had become totally disabled to perform any work or labor for compensation or profit, the general demurrer was properly overruled. From the same viewpoint, it might be interesting to examine the following cases: *New York Life Ins. Co.* v. *Tarbutton*, 45 *Ga. App.* 97 (163 S. E. 229); *New York Life Ins. Co.* v. *Oliver*, 45 *Ga. App.* 756 (2) (165 S. E. 840); *New York Life Ins. Co.* v. *Thompson*, 50 *Ga. App.* 413 (178 S. E. 389); *New York Life Ins. Co.* v. *Bradford*, 57 *Ga. App.* 657 (196 S. E. 92); *Bituminous Casualty Corporation* v. *Wilbanks*, 60 *Ga. App.* 620 (4 S. E. 2d, 916); *Mutual Life Ins. Co.* v. *Childs*, 64 *Ga. App.* 658 (14 S. E. 2d, 165). Suffice it to say, however, that both this court and the Court of Appeals have generally sought to avoid the unreasonable and absurd results which would necessarily follow if the language of policies like this one should be given a strict and literal, instead of a practical and reasonable, interpretation. This is what was meant and all that was meant by the statement in the *South* case, "this court is committed to the more liberal doctrine." By the terms of the instant policy, if

literally construed, the insured could not recover for permanent and total disability if he could sit on a street corner and sell shoestrings or lead pencils, and thereby earn a little money. Such an interpretation would not be in keeping with the evident intention of the parties, if we are to construe the contract in the light of the attendant and surrounding circumstances. Code, §§ 20-704 (1), 56-815.

The words "gainful occupation" are found here in a contract, and are not to be studied *merely* as words in a dictionary. They have been put into concrete use, and do not represent mere abstractions. Necessarily, therefore, in order to ascertain their meaning, they must be compared with something—something that was concrete and evidently within the view and contemplation of the parties at the time the policy was issued. Hence, resort to the attendant and surrounding circumstances, including the vocation of the insured and his earning capacity as illustrated thereby. These were the considerations underlying our decision in the *South* case, where we construed similar language as to permanent and total disability and formulated the rule that has been above quoted. Compare Lumbra· *v.* United States, 290 U. S. 551 (54 Sup. Ct. 272, 78 L. ed. 492) ; Miller *v.* United States, 294 U. S. 435 (55 Sup. Ct. 440, 79 L. ed. 977).

Numerous decisions by courts of other jurisdictions were cited and discussed in the brief for the insurer in the instant case. We have carefully examined each of these decisions, and do not regard any of them as being radically different from our own decision in the *South* case ; but even so, except for the one omission which has now been supplied, we are not inclined to depart from the rulings there made. See generally in this connection, Mutual Life Ins. Co. of New York *v.* Bryant, 296 Ky. 815 (177 S. W. 2d, 588) ; Dunlap *v.* Maryland Casualty Co., 203 S. C. 1 (25 S. E. 2d, 881, 149 A. L. R..1). Attention is specially called to the annotation following report of the last mentioned case in A. L. R., supplementing previous annotations.

·For the reasons stated above, the ruling of the Court of Appeals as'to what should be proved in order for the insurer to discontinue' payments of total-disability benefits was erroneous, as contended in the petition for certiorari. There was no exception to any ruling or statement by that court as to the burden of proof; and nothing' which we have said is intended to deal with that question.

■ It is further insisted that, under the terms of the policy as properly construed, a finding of total disability was not authorized, in view of the undisputed fact that during the period for which recovery was sought the insured held two public offices and received salaries totalling $135 per month; and that any decision of the Court of Appeals or of the Supreme Court which would permit a recovery under such a state of facts should be reviewed and over-ruled; the contention being that, under the facts of the case, the insured, as a matter of law, was gainfully employed, within the meaning of the policy.

As we have seen, the insured was chairman of the board of county commissioners of his county, with a salary of $75 per month. He was also a member of the municipal council of the City of Thomaston and chairman of the street committee, at a salary of $60 per month, making a total of $135 per month. In our opinion, counsel for the insurer lay too much stress on these salaries. The policy defined total disability as being "any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation," and thus did not include actual receipts from any source in its definition. The insured testified that at the time the policy was issued he was a practicing physician earning net from $700 to $800 per month. He also testified as to the nature and extent of his disability, and the character of his duties in the two offices mentioned. See his testimony as quoted by the Court of Appeals. Another physician testified that he suffered "a complete physical breakdown and strain, and he has not recovered from it." Another doctor testified that he had examined the insured many times since he became disabled, and that "there has been no change in his condition now and what it was last year," and that every time the witness examined the insured since he became sick the witness "considered him disabled to work." Still another testified that Dr. Barron had been suffering from a nervous trouble and the witness had always "found him disabled." Several other physicians were introduced as witnesses, some by the plaintiff, and some by the defendant, and the opinions of the witnesses were not in harmony. It may be stated further that most of the testimony related to the question whether Dr. Barron was able to follow his former profession as a practitioner of medicine. While this was not the true issue in the case, yet under

the evidence as a whole, including that of Dr. Barron himself, we think that it was a jury question as to whether he was unable from physical disability to perform any substantial part of the duties of his former profession or of such other employment approximating the same livelihood as he might fairly have been expected to follow, unless the issue as to such disability should have been determined against him, as a matter of law, because of the fact that he was receiving from the two offices a total income of $135 per month.

It is our opinion that the latter fact, even though it may be an important circumstance, should be considered as a circumstance only, and should not be held controlling, especially in view of the other evidence, as to the character of the duties performed, and as to the nature and extent of his disability. The clause under consideration was intended primarily as insurance against loss of earning capacity, and was not necessarily a provision against loss of income. *John Hancock Mutual Life Ins. Co.* v. *Frazer,* 194 *Ga.* 201 (2) (20 S. E. 2d, 915) ; see also, in this connection, 29 Am. Jur. 872, § 1161; Globe Accident Ins. Co. *v.* Helwig, 13 Ind. App. 539 (41 N. E. 976, 55 Am. St. R. 247) ; Duhaime *v.* Prudential Insurance Co. (1933), 86 N. H. 307 (167 Atl. 269) ; Austell *v.* Volunteer State Life Ins. Co. (1933), 170 S. C. 439 (170 S. E. 776) ; Medlinsky *v.* Metropolitan Life Ins. Co. (1933), 146 Misc. 855 (263 N. Y. S. 179) ; Mutual Life Ins. Co. *v.* Dowdle (1934), 189 Ark. 296 (71 S. W. 2d, 691) ; Metropolitan Life Ins. Co. *v.* Tessire (1934) (Tex. Civ. App.), 70 S. W. 2d, 209; Prudential Ins. Co. *v.* Davis (1934), 18 Tenn. App. 413 (78 S. W. 2d, 358) ; and cases collected in editorial note, 98 A. L. R. 796-798.

Counsel for the insurer cite one case involving a public office or public employment, to wit, McKinnie *v.* Metropolitan Life Ins. Co. (D. C.) 37 Fed. Supp. 992. In that case it appeared that the insured was prevented by a physical ailment from continuing his ordinary employment. Later he obtained a position as superintendent of a village water department at a salary of $130 per month. In this position he was required to work from forty-five to fifty hours a week, and was subject to call at any time, day or night. It was held that the evidence failed to show total disability, notwithstanding the insured's job was political and might end with a change of administration. In the instant case, the evidence did not show such sustained physical capacity as was demonstrated by the evidence in the McKinnie case.

In *Johnson* v. *Brooks*, 139 *Ga.* 787 (78 S. E. 37), it was held that an officer's right to his compensation does not grow out of a contract between him and the State or municipality by which it is payable, but is an incident of the office, and therefore the fact that an officer has not performed the duties of his office does not deprive him of the right to the salary attached thereto, provided his conduct does not amount to an abandonment of the office. However, in order to deal with the present case as one of more general interest, we lay entirely aside the official nature of the insured's employment; nor do we decide anything with respect to that feature.

Undoubtedly, $135 per month is in one sense a substantial sum, yet it is less than one-fifth of the amount the insured was earning at the time the policy was issued, and it may or may not represent his present actual earning capacity. Whether, if it did, such ratio might then be held as a matter of law to represent a substantial part of his former earning capacity, is a question that need not be determined, since, as we have seen, the evidence as to the character of the services rendered, and as to actual disability, should also be considered.

For one reason or another, a person may be paid more than his services are really worth, or he may be paid less than they are worth. If more, it seems that the excess should not be taken as a payment for the benefit of the insurance company, where, as here, the insurance is ultimately against loss of earning capacity, and not strictly against loss of income. On the other hand, if the wage or salary is less than the services are worth, the difference should not strengthen the insured's claim under such a policy. Furthermore, an insured might after a period of total disability regain his entire former earning capacity, or a substantial part of it, and yet, from inability to find employment or for other reason, remain unemployed. Manifestly, therefore, neither income nor proportion of ordinary income during a period of claimed disability could in all cases be treated as the final criterion. Nor should it be overlooked that questions as to disability and capacity, like questions as to value, negligence, and similar matters, would ordinarily fall within the peculiar province of the jury as triors of fact, where there is any data in evidence for the exercise of their own "knowledge and ideas." *Baker* v. *Richmond City Mill Works*, 105 *Ga.* 225, 227 (31 S. E. 426); *Simmons* v. *Simmons*, 194 *Ga.* 649, 654 (22 S. E. 2d, 399).

As to the request to review and overrule such decisions of this court and of the Court of Appeals as might tend to sustain a recovery under the facts of this case, we may say: The decision in the *Cato* case, 164 *Ga.* 392 (supra), we regard as sound when considered in the light of its facts, notwithstanding the dictum therein, which was disregarded even in the *South* case. In *New York Life Ins. Co.* v. *Thompson*, 177 *Ga.* 898 (supra), we simply affirmed "the judgment" of the Court of Appeals in a case which did not necessarily turn upon application of the occupational rule. See *New York Life Ins. Co.* v. *Thompson*, 45 *Ga. App.* 638, 641 (supra). The decision in *Prudential Insurance Co.* v. *South*, 179 *Ga.* 653 (supra), we consider sound, except for the one omission, to which we have referred. The decision in *Metropolitan Life Ins. Co.* v. *Johnson*, 194 *Ga.* 138 (supra), states what we consider the true rule in a case of this character, and in language that can not well be misunderstood. It did not treat the policy there as an occupational one, but recognized that the insured would not be totally disabled, if he had sufficient capacity to perform the duties of his ordinary occupation or of such other employment, if any, approximating the same livelihood, as he might fairly be expected to follow in view of his station, circumstances, and mental and physical capabilities. Nor is there anything in *John Hancock Mutual Life Ins. Co.* v. *Frazer*, 194 *Ga.* 201 (supra), that we think should be retracted. Accordingly, the request to overrule the foregoing decisions by this court is denied.

In so far as decisions of the Court of Appeals may, under persuasion of the *Cato* case, have construed policies like the instant one as covering disability to pursue particular occupations, they are disapproved, but it is unnecessary to review and overrule them, since the constitution requires the Court of Appeals to follow the decisions of the Supreme Court as precedents. Presumably, in the future as in the past, that court will endeavor to ascertain and apply the law accordingly.

While, as we have said, the Court of Appeals, in this case, laid down an incorrect rule for determining total disability, yet, under what we regard as the true rule, that court could not have done otherwise than to affirm the judgment refusing a new trial in so far as it was contended that the verdict was contrary to the evidence and without evidence to support it. The errors committed were

thus harmless as related to the assignments of error in the petition for certiorari. The court also ruled on exceptions to the judge's charge to the jury, and held that it did not contain error as against the insurer; but the petition for certiorari did not assign error upon any part of the decision relating to that question, and consequently we do not pass upon the correctness or incorrectness of the judge's charge. It follows that the judgment of the Court of Appeals must be affirmed, notwithstanding we can not approve some of the language used in the decision. As to this procedure, compare *Metropolitan Life Ins. Co.* v. *Johnson,* 194 *Ga.* 138 (supra); *Georgia Power Co.* v. *Leonard,* 187 *Ga.* 608, 616 (1 S. E. 2d, 579).

*Judgment affirmed. All the Justices concur. Duckworth, J., concurs specially.*