## 30638. MUTUAL LIFE INSURANCE COMPANY *v.* LANGFORD.

DECIDED NOVEMBER 10, 1944. REHEARING DENIED DECEMBER 12, 1944.

*Grover Middlebrooks, A. B. Conger, Louis W. Dawson,* for plaintiff in error.

*W. H. Miller, John R. Wilson,* contra.

FELTON, J. Wesley E. Langford sued Mutual Life Insurance Company of New York in the city court of Bainbridge to recover monthly disability-benefit payments of $30 each, alleged to be due from May, 1941, to the time of the trial, total $930, together with premiums paid during said period, and damages, and attorney's fees. The jury found for the plaintiff $1,258.88 for disability; $328.88 for return premiums; $313.47 for damages; and $1,000 for attorney's fees. The plaintiff wrote off of the verdict $328.88, as excessive disability payments. The insurance company's motion for a new trial was overruled, and it excepted.

The policy provided for disability payments from the date of disability if the insured furnished to the company due proof that he was totally and permanently disabled. Total disability is defined in the policy as follows: "Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation." The Supreme Court has construed this or similar provisions as to total disability in several cases. *Mutual Life Insurance Co.* v. *Barron,* 198 *Ga.* 1 (30 S. E. 2d, 879); *Metropolitan Life Insurance Co.* v. *Johnson,* 194 *Ga.* 138 (20 S. E. 2d, 761); *Prudential Insurance Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499,

98 A. L. R. 781); *Cato v. Ætna Life Insurance Co.*, 164 *Ga.* 392 (138 S. E. 787). The application for the insurance showed that in 1926 when the policy was issued the insured stated that he was a partner and general manager and engineer of Bainbridge Stave Company. At the time of his injury in April, 1941, he was employed by L. B. Hodges in the operation of a sawmill. He has not been employed since. He now lives on a farm with his wife, and is able to do little jobs not requiring much physical exertion, such as milking one cow once a day, and driving an automobile to town and back once a week, buying and hauling supplies to the farm, and hauling farm produce to market. The farm on which he lives contains 61.5 acres. Adjoining that farm is one owned by his wife, consisting of three or four hundred acres of land. There is one sharecropper for each farm. The insured testified that he did some supervisory work, but that ninety-five per cent. of his duties was manual; that he was never trained to do supervisory work; that he did not know how to farm; that his sharecropper was a farmer and did not need any supervision. Dr. Gordon Chason, the insured's physician, testified that the insured had sustained a strain to the sacroiliac, could not do hard manual labor, but could perform supervisory work. Dr. W. L. Wilkinson testified as to the same injury, and that the insured could do light work, but could not say whether in his opinion there was anything to keep him from doing supervisory duties; that a misstep would be painful to a man in the insured's condition. Dr. Ernest L. Wahl testified that he doubted whether the insured would ever be able to do anything that required movement of his back unless he had surgical treatment; that if he attempted to do anything that put a strain on his back he would run the risk of increasing his disabilities; and that he advised him to avoid anything that increased pain; that he thought it probable that he could be cured by an operation, but that not all such cases could be completely cured by an operation. We have not attempted to quote all of the evidence. What we have quoted and that which we have omitted shows that the insured was injured and that his condition required that he refrain from any exertion which might cause him pain; that most of his usual labor or undertakings were manual, requiring heavy physical exertion; that he had desisted from such work, and that he was not mentally or by training equipped to do supervisory

work disassociated from manual labor. We are of the opinion that the evidence demanded the finding that the insured was totally and permanently disabled within the meaning of the policy as construed by the Supreme Court. It follows that any error in the charge of the court on this question was harmless.

2. The court erred in charging the jury as follows: "If you should find from the evidence submitted to you that the insurance company gave a reason for denying the plaintiff's claim or for its conduct and decision touching anything involved in the controversy, that it can not after litigation has begun change its ground or reason for its said conduct and decision and put its conduct upon another and different consideration." This charge was not warranted by the pleadings or evidence and tended to prejudice the jury against the insurance company in their consideration of the question whether payment was refused in bad faith. The insurance company refused to pay the claim because it contended sufficient proofs of disability had not been submitted, but reserved the right to urge other available reasons. For this charge to have been applicable there must have been evidence from which the jury could find that the insurance company had been guilty of conduct which had caused the insured to act respecting the matter to his injury, and under which the insured would be placed at a disadvantage if the insurance company should be allowed to rely on a ground other than that urged as a reason for its conduct and decision. *Riverside Academy* v. *Urigh,* 33 *Ga. App.* 455 (126 S. E. 900), and cit. The ruling in *Metropolitan Life Insurance Co.* v. *Lovett,* 50 *Ga. App.* 763 (4) (179 S. E. 253), is not to the contrary of what is here ruled. The situation in that case is the converse of the situation in this case. In this case the insured was not handicapped in showing that he was totally and permanently disabled because the insurance company refused to pay him on the ground that due proof of disability was not furnished, giving information sufficient to call for action by the company.

The judgment is affirmed as to the $930 for disability payments and $328.88 return premiums, and reversed as to the $313.47 damages and $1,000 attorney's fees, with the direction that on another trial the issues be confined to the question of damages and attorney's fees.

*Judgment affirmed in part and reversed in part, with direction as stated in the opinion. Sutton, P. J., and Parker, J., concur.*