A94A2179. EQUICOR, INC. v. STAMEY.
(454 SE2d 550)

SMITH, Judge.

Charles Stamey brought suit against Equicor, Inc., to recover the proceeds of a group insurance policy issued to him while he was em-

ployed with the Atlanta Police Department. Equicor appeals the trial court's entry of judgment in favor of Stamey after a bench trial.

The policy was issued by the Equitable Life Assurance Society of the United States and administered by Equicor.[1] In addition to life and accident benefits, the policy provides that if an employee for more than one year becomes "totally disabled by injury or disease" before age 65 so that he or she is "not able, presumably for life, to do any work for compensation or gain," the group life insurance terminates, and the employee is instead entitled to disability benefits based on one-half the amount of the employee's life insurance in effect immediately prior to disability. These benefits are payable in sixty equal monthly installments beginning either six months after the date the disability begins or the date the claim is approved, whichever is later. The amount is payable at the rate of $18.74 for each $1,000 of insurance.

In December 1990, Stamey, a motorcycle policeman, injured his left knee. He was hospitalized for several weeks and underwent rehabilitation for nine months. He has had several surgeries, remains in considerable pain, and has an "open prescription" for pain medication. He was retired from the Atlanta Police Department effective June 30, 1992, because of a permanent disability.

While with the police department, Stamey served as a dispatcher, did telephone work, and served as a patrolman. Failing portions of the examinations for sergeant, he never advanced beyond the rank of patrolman. He does have extensive education, including an accounting degree from Oglethorpe University, a law degree from John Marshall Law School, and a graduate degree in government administration from Georgia State University. However, he has never worked in these areas.

Equicor denied his claim for disability benefits under the policy, based on its conclusion that given Stamey's education and the nature of his disability, he could work at certain sedentary jobs in other fields and that the policy required that to be eligible for disability benefits, he must be totally disabled from performing work of any kind. It informed Stamey that a condition of total disability had not been proved. This action ensued.

1. The trial court based its ruling in favor of Stamey on *John Hancock Mut. Life Ins. Co. v. Poss*, 154 Ga. App. 272 (267 SE2d 877) (1980). Relying on *Mut. Life Ins. Co. of New York v. Barron*, 198 Ga. 1 (30 SE2d 879) (1944), Equicor contends the trial court erred in its construction of the holding in *Poss* and ignored that in *Barron*. In

---

[1] Equitable sold its group programs, along with its administrative arm, Equicor, to CIGNA Companies. Equicor is now a subsidiary of CIGNA.

*Barron*, the Supreme Court pointed out the material difference between policies providing disability payments when the insured is unable to carry on a particular occupation and those under which such payments are made if the insured becomes disabled from performing any gainful work or occupation. Id. at 5. However, even in *Barron*, it was held that total disability does not mean absolute physical inability to pursue any occupation for gain. If such language were literally construed, "the insured could not recover for permanent and total disability if he could sit on a street corner and sell shoe-strings or lead pencils, and thereby earn a little money. Such an interpretation would not be in keeping with the evident intention of the parties, if we are to construe the contract in the light of the attendant and surrounding circumstances. [Cit.]" Id. at 10. Employing that approach, disability exists if the condition of the insured prevents him from performing a substantial portion of the duties of his occupation or such other line of work as he might reasonably be expected to follow, considering his education, experience, age, and natural ability. Id. at 9.

The holding in *Poss* is in complete harmony with that approach. In that case, a meat truck driver suffered a disabling back injury and sought to recover disability payments under a similarly worded "any occupation" policy. The insurer denied the claim on the basis that there were many different types of occupations for which the insured could be retrained. This court reviewed prior decisions relating to "any occupation" policies and held, as we do here, that *Barron* did not overrule prior decisions holding that policies requiring the insured to be unable to perform "any occupation" for gain in order to recover must not be construed literally. On the contrary, "total disability is properly considered within the context of the insured's customary and usual vocation." Id. at 278 (2). The policy was issued while Poss was employed as a meat truck driver. In order to show that he was not disabled within the meaning of the policy, the insurer would be required to show that he could perform "some *substantial part* of the duties of his [former occupation]." Id. at 276. However, all the possible occupations offered in the testimony of the insurer's expert were dissimilar to the insured's former occupation as a meat truck driver and did not show he had the ability to perform any substantial portion of his former work. Id. at 277.

Under both *Barron* and *Poss*, "total disability" requires only that the insured be unable to perform substantial portions of his ordinary employment or any other employment approximating the same livelihood as he might fairly be expected to follow, given his personal circumstances, including his experience, education, and physical and mental capabilities. *Barron*, supra at 10; *Poss*, supra at 275.

In this case, Stamey was employed as a police officer for 19 years. He never advanced beyond the rank of patrol officer. There was un-

disputed medical testimony that Stamey, because of his disability, is no longer capable of performing "any activities relating to police work."

Katherine Willard, Equicor's vocational rehabilitation expert, testified that in her opinion there were many work opportunities for Stamey in "middle management positions," government administrative work such as ADA compliance, or supervisory or teaching jobs in security. However, although his advanced education appears at first blush to render him capable of performing these other jobs, he has no experience in any of these fields. While he is schooled as a lawyer, he has not passed the bar examination and is no longer academically eligible to retake it. He is, therefore, unable to practice law. His difficulties in advancing beyond patrolman in the Atlanta Police Department suggest, in fact, that he has problems in translating his education into viable work experience and that he would be incapable of supervisory or administrative work.

Under these circumstances, Equicor has not shown that Stamey is able to perform a substantial portion of the duties of the lines of work he would be expected to follow given his education, experience, and physical and mental capabilities. The trial court did not err in finding that he is totally disabled within the meaning of the policy.

2. We agree as well with the trial court's conclusion that in view of the fact that *Poss* was decided in 1980, settling the law on this issue, as well as our conclusion that *Poss* is not in conflict with *Barron*, no bona fide controversy existed regarding Stamey's entitlement to disability benefits. See *Gist v. Ferguson Constr. Co.*, 197 Ga. App. 625, 627 (4) (398 SE2d 862) (1990). On this basis, Equicor's denial of Stamey's claim properly may be considered stubborn and litigious. Id. An award of attorney fees and expenses of litigation must be affirmed if there is any evidence to support it. There being some evidence of stubborn litigiousness, the trial court did not err in awarding expenses of litigation under OCGA § 13-6-11. Id. at 628.

3. We find no merit in Equicor's contention that the trial court erred in awarding prejudgment interest at the rate of seven percent because OCGA §§ 7-4-2 and 7-4-15 have been held specifically inapplicable to life insurance policies. *Southwestern Life Ins. Co. v. Middle Ga. Neurological Specialists*, 262 Ga. 273, 276 (2) (416 SE2d 496) (1992). OCGA § 33-25-10, which governs the payment of interest on proceeds or payments under life insurance policies, clearly contemplates situations where the insured is deceased; it requires the computation of interest from the date of the insured's death until the date of payment. No death is involved here. Moreover, even assuming that OCGA § 33-25-10 applies here, and not OCGA §§ 7-4-2 and 7-4-15, that statute provides for the payment of interest at the legal rate. OCGA § 33-25-10 (b) (1).

We likewise do not agree with Equicor that because the monthly payments are calculated in a fashion that includes an interest factor, the trial court could not award prejudgment interest. "OCGA § 7-4-15 provides that '(a)ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them. . . .' An award of interest under this provision is not premised on bad faith but on the principle that when a debt is owed and the demand for funds is made, interest accrues from the time entitlement attaches. [Cit.]" *Rivergate Corp. v. Atlanta Indoor Advertising Concepts*, 210 Ga. App. 501, 503 (3) (436 SE2d 697) (1993). Because the amount due on the policy was fixed, certain, and ascertainable, the damages sought are liquidated, and prejudgment interest was awardable as a matter of law. Id. The trial court did not err in awarding prejudgment interest.

4. We have considered Equicor's remaining enumerations of error and find them without merit.

*Judgment affirmed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 6, 1995 —
RECONSIDERATION DENIED FEBRUARY 23, 1995 — ▆▆▆▆▆▆

*Richelo, Morrissey & Gould, Brian J. Morrissey,* for appellant.
*Carter A. Setliff, William G. Hammonds,* for appellee.