Neil S. GLADSTONE, MD, Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

Civil Action No. 1:05–CV–2868–CC.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 17, 2007.

---

Ronald Lamar Hilley, Hilley & Frieder, Tucker, GA, for Plaintiff.

H. Sanders Carter, Jr., Smith Moore, LLP, Tiffany D. Downs, Michael Andrew Coval, Ford & Harrison, Atlanta, GA, for Defendant.

## ORDER

CLARENCE COOPER, District Judge.

This matter is presently before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 25] and Defendant's Cross–Motion for Summary Judgment [Doc. No. 36]. This Court heard oral argument on the motions on July 2, 2007. After carefully reviewing the submissions of the parties, the record in this case, and the applicable law, the Court determined that the motions should be denied and announced this ruling at the July 2, 2007 hearing. This written opinion sets forth the Court's decision in greater detail.

## I. BACKGROUND

Effective January 1, 1990, Defendant Provident Life and Accident Insurance Company ("Provident") issued to Plaintiff Neil S. Gladstone, M.D. ("Dr.Gladsone") Policy No. 06–337–7024221 (the "Policy"). (Defendant's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried [Doc. No. 36–13] ("DSMF") ¶ 1.) The Policy provides benefits in the event of "total disability" or "residual disability." (DSMF ¶ 2.) "Total disability" is defined in the Policy to mean that, due to injury or sickness, the insured is "not able to perform the substantial and material duties of his or her occupation" and the insured is "receiving care by a Physician which is appropriate for the condition causing the disability." (DSMF ¶ 3.) Occupation is defined in the Policy to mean "the occupation ... in which [the insured is] regularly engaged at the time [he or she] become[s] disabled." (DSMF ¶ 4.) The Policy further provides that if the insured's occupation "is limited to a recognized speciality within the scope of [the insured's] degree or license, we will deem [the] specialty to be [his or her] occupation." (*Id.*) To be suffering from a "residual disability" under the Policy, the insured must, among other things, be unable "to do one or more of [his or her] substantial and material daily business duties." (DSMF ¶ 5.)

Since 1975, Dr. Gladstone has been licensed to practice medicine in the State of Georgia. (Plaintiff's Statement of Material Facts to Which Plaintiff Contends There Is No Genuine Issue to Be Tried [Doc. No. 25–3] ("PSMF") ¶ 1.) Since 1975, Dr. Gladstone has been board certified in obstetrics and gynecology. (PSMF ¶ 2.) In 1990 or

1991, Dr. Gladstone discontinued his obstetrical practice. (PSMF ¶ 3.) Since that time, Dr. Gladstone has provided office-based gynecological services and has performed hospital-based gynecological surgeries. (DSMF ¶¶ 11–12.) Dr. Gladstone performed surgery in a hospital setting, with laparoscopies encompassing 95 percent of those surgeries. (DSMF ¶ 11.) Dr. Gladstone's office practice involved examining and treating gynecologic conditions such as endometriosis, menopause, and infertility; managing menstrual and hormonal problems; providing contraceptive and reproductive counseling; ordering and evaluating laboratory work, mammograms, ultrasounds, sonograms, and bone density tests; and performing minor surgical procedures including endometrial ablations, hysteroscopies, colposcopies, and a variety of biopsies. (DSMF ¶¶ 13–16.) Plaintiff estimated that 60 percent of his four-day, 40–hour work week was devoted to his office practice while 40 percent was devoted to hospital-based surgery. (DSMF ¶¶ 17–18.) [1]

Another physician that practiced with Dr. Gladstone, Dr. Steven A. Rabin, assisted Dr. Gladstone with surgery. (PSMF ¶ 14.) Dr. Rabin recognized that Dr. Gladstone was having problems with the use of his hands and that his surgical skills were deteriorating. (PSMF ¶ 15.) Dr. Gladstone's surgical skills deteriorated to the point that his partners, Dr. Rabin and Dr. Paul Katz, demanded that he stop performing hospital-based surgery. (PSMF ¶ 16.) Since April 20, 2000, Dr. Gladstone has not performed any hospital-based surgery. (PSMF ¶ 18.) Dr. Gladstone restricted his practice to office-based gynecology and continues to practice gynecology 40 hours per week in an office setting. (DSMF ¶¶ 25, 33.) As a result of Dr. Gladstone's inability to perform hospital-based surgery, his income has dropped by 63 percent. (PSMF ¶ 25.)

Since September 5, 2001, neurologist Mark A. Kozinn, M.D., has been Dr. Gladstone's treating physician. (PSMF ¶ 19.) Dr. Kozinn has diagnosed Dr. Gladstone with bilateral carpel tunnel. (PSMF ¶ 20.) Dr. Kozinn placed no restrictions or limitations on Dr. Gladstone's ability to engage in an office-based practice; however, Dr. Kozinn testified that Dr. Gladstone should not be in the operating room. (Deposition of Mark Kozinn, M.D., at 45, 46–47.) In March 2002, Dr. Gladstone submitted to Provident a claim for benefits under the Policy, stating that he became unable to perform hospital-based surgery in April 2000. (DSMF ¶ 29.) Dr. Gladstone reported that he became disabled due to carpal tunnel syndrome. (DSMF ¶ 30.) The earliest time when Dr. Gladstone's right to recover benefits could accrue was September 5, 2001, when he came under the care of a physician. (DSMF ¶ 32.) Provident determined that Plaintiff was residually disabled and has paid residual disability benefits to Plaintiff, beginning in November 2001. (DSMF ¶ 35–36.)

On November 7, 2005, Plaintiff filed the instant lawsuit. Plaintiff's Complaint alleges two claims for relief: (1) a contract claim for recovery of benefits under the Policy and (2) a claim for recovery of bad faith penalties, attorney fees, and expenses pursuant to O.C.G.A. § 33–4–6. Plaintiff and Defendant have filed motions for summary judgment in this case.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

1. Specifically, Plaintiff testified that, out of the total time devoted to his practice, "60 percent would be in the office and 40 percent would be in the hospital." (Deposition of Neil Gladstone, M.D., at 39.)

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). While the movant carries the initial burden of showing the absence of a genuine issue as to any material fact, the movant is not required to negate his opponent's claim, but rather, may discharge his burden merely by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When this burden is met, the non-movant is then required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548.

A court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Sub-

stantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. 2505.

## III. LEGAL ANALYSIS

### A. *Plaintiff's Motion for Summary Judgment*

As an initial matter, the Court notes that Plaintiff includes numerous factual statements in the Brief in Support of Plaintiff's Motion for Summary Judgment [Doc. No. 25–2] that are not included in Plaintiff's Statement of Material Facts to Which Plaintiff Contends There Is No Genuine Issue to be Tried [Doc. No. 25–3]. Pursuant to Local Rule 56.1, the Court will not consider facts that appear only in Plaintiff's brief in this summary judgment ruling. *See* Local Rule 56.1B (1) (noting that the Court will not consider any fact "set out only in the brief and not in the movant's statement of undisputed facts").

■ Plaintiff contends that the Policy's definition of the term "total disability" is ambiguous and must be construed against Defendant. Plaintiff cites *Giddens v. Equitable Life Assurance Society of the United States*, 445 F.3d 1286 (11th Cir.2006). The Court agrees that *Giddens* is instructive in this case; however, the Court disagrees with Plaintiff's conclusion that he is totally disabled as a matter of law. In *Giddens*, the Eleventh Circuit considered a disability insurance policy containing a virtually identical definition of "total disability" as in the instant case. *See Giddens*, 445 F.3d at 1288 (noting that the policy defined "total disability" as the "inability due to injury or sickness to engage in the substantial and material duties of your regular occupation"). The Eleventh Circuit found that the definition of "total disability" was ambiguous and construed the policy in favor of the insured. *Id.* at 1298. The Court concluded that the insured could "establish total disability if he cannot engage in his [regular] occupation because he is unable to perform most or the vast

majority of the substantial and material duties of his occupation." *Id.* The Eleventh Circuit further noted that the fact that the insured "may be able to perform one or more of the substantial and material duties associated with [the] occupation simply does not preclude a showing of total disability under the terms of [the policy]." *Id.*

Plaintiff largely relies on *Dowdle v. National Life Insurance Company,* 407 F.3d 967 (8th Cir.2005), which was cited with approval in *Giddens,* to support his position in this case. Dr. Dowdle was an orthopedic surgeon. Prior to his disability, Dr. Dowdle "devoted 5 half-days to surgery and 5 half-days to office consultations" and 85 percent of his practice was comprised of "surgery and surgery-related care." *Dowdle,* 407 F.3d at 968. After suffering injuries in a plane crash, Dr. Dowdle could no longer perform surgery. The Eighth Circuit found that "[b]ecause Dr. Dowdle's disability prevents him from performing the most important part of his occupation, he is entitled to total disability benefits under [state] law." *Id.* at 972. In the instant case, however, Dr. Gladstone testified that before he became disabled, 40 percent of his time was spent in the hospital and 60 percent of his time was spent in the office. Dr. Gladstone did not divide his time into surgical and non-surgical activities. In addition, the Eleventh

Circuit in *Giddens* did not define total disability to mean that the insured is prevented from performing the most important part of his occupation, as the Eighth Circuit appears to have done in *Dowdle.* Accordingly, the Court finds that *Dowdle* does not establish Plaintiff's entitlement to summary judgment in this case.

The Court finally disagrees with Plaintiff's assertion that the undisputed facts in this case compel a finding that he is totally disabled. Plaintiff submits that the "undisputed" testimony of Dr. Rabin establishes that Plaintiff's "primary duty" was hospital-based surgery. (Brief in Support of Plaintiff's Motion for Summary Judgment, p. 23.) Plaintiff's own testimony establishes that he devoted only 40% percent of his time to performing hospital-based surgery. Plaintiff's testimony does not provide any information regarding the portion of his office-based practice, if any, that was devoted to surgery-related care. The record further reflects that, prior to his disability, Plaintiff performed a full range of office-based services, which he continues to perform. The Court therefore cannot conclude, as a matter of law, that Dr. Gladstone is totally disabled because he is unable to perform most or the vast majority of the substantial and material duties of his occupation. The Court finds that a genuine issue of material fact is present as to this issue.[2]

2. Defendant contends there is also a genuine issue of material fact as to whether Plaintiff's decision to stop performing surgery was a financial decision or one based on his disability. Defendant cites an undated document authored by Plaintiff after his clinical privileges to perform laparoscopic gynecology procedures at the hospital were suspended, reinstated, and voluntarily relinquished. In that communication, Plaintiff states that the decision to resign his laparoscopic privileges "corresponds with a financial decision [he] had made ... at the end of 1999 to stop performing surgery in the Summer of 2000." (Defendant's Cross–Motion for Summary

Judgment, Exh. 3 [Doc. No. 36–4].) The undisputed evidence in this case establishes that Dr. Gladstone ceased performing hospital-based surgery in April 2000 and that his surgical skills had been deteriorating for several months prior to this date. While Dr. Gladstone may have expressed an intention to cease performing surgery in Summer of 2000, Defendant cites nothing to indicate that he effectively changed his mind and decided to cease performing surgery in Spring 2000 or that Dr. Gladstone was in fact physically capable of performing surgery in the Spring or Summer of 2000, regardless of his previous decisions regarding the potential end-date for

### B. *Defendant's Motion for Summary Judgment*

Defendant devotes much of its brief to the argument that "total disability" under the Policy is only established if Plaintiff is unable to perform *all* of the substantial and material duties of his occupation. Defendant essentially contends that the *Giddens* case was wrongly decided. As an initial matter, the Georgia case law that Defendant identifies as controlling precedent—*Cato v. Aetna Life Ins. Co.*, 164 Ga. 392, 138 S.E. 787 (1927); *Cloer v. Life & Casualty Ins. Co.*, 222 Ga. 798, 152 S.E.2d 857 (Ga.1966); *Mut. Life Ins. Co. of New York v. Barron*, 198 Ga. 1, 30 S.E.2d 879 (Ga.1944); *Metro. Life Ins. Co. v. Johnson*, 194 Ga. 138, 20 S.E.2d 761 (1942); *Prudential Ins. Co. of Am. v. South*, 179 Ga. 653, 177 S.E. 499 (Ga.1934)—was in fact considered by the Eleventh Circuit in *Giddens. Giddens*, 445 F.3d at 1299. The Eleventh Circuit found that the cases failed to support the position of the insurer "because the policy language interpreted in those cases was substantially different from the relevant language in this case." *Id.* The Eleventh Circuit also noted that "[m]ore importantly, none of the policies in these Georgia cases contained the language at issue here—'the substantial and material duties.'" *Id.* The Court has reviewed the cases cited by Defendant and agrees with the Eleventh Circuit's position that these cases do not provide guidance as to the proper construction of the policy language at issue in this case, particularly as the cases did not consider similar language. In addition, the Court has been unable to locate any published Georgia state court cases that address the meaning of the policy language at issue in this case.[3]

■ The Court similarly disagrees with Defendant's argument that no other construction of the policy language is reasonable because the "residual disability" clause precludes any other construction. The Eleventh Circuit considered this exact argument in *Giddens* and found it unpersuasive. The Court explained, as follows:

> Quite obviously, there is a continuum of disability. If the insured is unable to perform only "one or more" of many material occupational duties, then the insured would not be totally disabled.

performing hospital-based surgery. In addition, the record contains information regarding the suspension of Dr. Gladstone's privileges and the later reinstatement and then voluntary resignation of those privileges, the demand from his partners that he cease performing surgery in January 2000, and the value that Dr. Gladstone placed on his surgical skills. In view of the forgoing, the Court finds no genuine issue of material fact as to this issue.

Defendant also contends that there is a genuine issue of material fact as to whether performing hospital-based surgery was a substantial and material duty of Plaintiff's occupation when he came under the care of a physician, such that he could potentially be considered "totally disabled" pursuant to the Policy. The Court disagrees with Defendant's position on this issue. While the terms of the Policy plainly require that an insured be under the care of a physician before he or she can be considered totally disabled, the Policy definition of occupation is not so limited. The Policy defines occupation as the occupation in which the insured is regularly engaged at the time the insured became disabled. The disability referenced in this definition is not limited by either the definition of total disability or the requirement that the insured be under the care of a physician. The Court accordingly finds that there is no genuine issue of material fact as to this issue.

3. Defendant references cases from other jurisdictions to support its position that the policy language should be construed to limit an insured's entitlement to total disability benefits to circumstances where the insured is unable to perform all the substantial and material duties of his or her regular occupation. The Court need not address these cases, insofar as the Court finds the *Giddens* decision authoritative.

Where the insured . . . is unable to perform most or the majority (but not all) of the material duties and thus cannot engage in his regular occupation, the insured nevertheless is totally disabled from his regular occupation, and this interpretation does not nullify the Residual Disability clause. At some point, a line must be drawn where the disability becomes so severe, and affects such a large percentage of the insured's material and substantial duties, that the disability is total rather than residual. The language of the Residual Disability clause does not suggest where that line should be drawn and certainly does not require that it be drawn only where [the insurance company] suggests. If [the insurance company] means all in its Total Disability clause, then [it] may make that simple change to its policy forms.

*Giddens,* 445 F.3d at 1300–01.

In short, this Court finds that the construction of the policy language stated in *Giddens* should be applied in this case such that Plaintiff is totally disabled if he cannot engage in his regular occupation because he is unable to perform most or the vast majority of the substantial and material duties of his occupation. Defendant argues that Plaintiff is not totally disabled even under the *Giddens* construction of the term "total disability" because Plaintiff is able to perform most or the majority of his substantial and material duties and that he continues to engage in his regular occupation. The Court finds that this determination is not properly made by the Court as a matter of law. While the record reflects that Dr. Gladstone devoted only 40 percent of his time to performing hospital-based surgery, the record also reflects that Dr. Gladstone's income dropped significantly after he was no longer able to perform hospital-based surgeries, that he was well-known in the community for his surgical skills, that he performed complex and lengthy surgeries,

and that no other physician in his practice was able to perform those surgeries after Dr. Gladstone became unable to perform them, such that the practice could no longer care for patients requiring those procedures. Accordingly, there is a genuine issue of material fact in this case as to whether Plaintiff is unable to perform most or the majority of the substantial and material duties of his regular occupation.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment [Doc. No. 25] and Defendant's Cross–Motion for Summary Judgment [Doc. No. 36] are **DENIED.** The Court **INSTRUCTS** the parties to submit a proposed joint consolidated pretrial order in accordance with Local Rule 16.4 within thirty (30) days of the date of this Order.