A07A1025. POMERANCE v. BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA.
(654 SE2d 638)

BERNES, Judge.

This appeal involves the interpretation of the total disability provision found in four occupational insurance policies. The trial court concluded that the policies' definition of total disability was unambiguous and that the insured, Alan J. Pomerance, M.D., was not totally disabled as a matter of law. Consequently, the trial court granted summary judgment in favor of the insurer, Berkshire Life Insurance Company of America, and denied Pomerance's motion for partial summary judgment. Pomerance now appeals, and for the reasons discussed below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the opposing party must be given the benefit of all reasonable doubt, and the court must construe the evidence and all inferences and conclusions arising therefrom most favorably to the party opposing the motion. However, rules of contract construction and interpretation are separate from those rules allocating burdens of proof at trial and on motion for summary judgment, and thus are to be independently applied.

(Citation and punctuation omitted.) *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798 (635 SE2d 168) (2006). Our review of the evidence is de novo. *Hill v. Green Tree Servicing*, 280 Ga. App. 151, 152 (633 SE2d 451) (2006).

So viewed, the record evidence shows that Pomerance is a board certified obstetrician/gynecologist ("Ob/Gyn"). Between 1983 and 1992, Pomerance purchased four insurance policies from Berkshire Life Insurance Company of America providing him with "own occupation" disability insurance protection (collectively, the "Policies").

Under the Policies, Berkshire was required to pay Pomerance monthly indemnity payments if he became "totally disabled." The policy language initially defined total disability as the insured's "inability to engage in [his] occupation." Thereafter, Berkshire issued a statement reflecting policy changes effective on April 1, 1984. The policy statement revised the language of the insurance contract by defining total disability as "[the insured's] inability to perform the material and substantial duties of [his] occupation." The policy statement highlighted this revision as "[i]mproved language." Explaining the impact of the revised language, the policy statement provided: "This means that [the insured] no longer [has] to be unable to perform *all* the duties of [his] occupation to be considered disabled. [The insured] could be entitled to benefits if [he is] unable to perform [his] material and substantial duties."

In addition, the Policies contained a "Residual Disability Indemnity" rider, an optional supplemental benefit purchased by Pomerance. The residual disability rider provided more limited coverage in the event that Pomerance became unable to perform "one or more . . . important daily business or professional duties." In a "Description of Occupation" form filled out by Pomerance, he listed his "occupational duties and activities" in order of importance as the delivery of babies, surgeries, C-sections, office visits, making hospital rounds, and being on call.

In September 1995, Pomerance was diagnosed with a degenerative knee condition. He claimed that he could no longer stand for long periods of time, which rendered him unable to perform deliveries and hospital surgeries, to serve on call, or to assist with emergency room coverage. As such, Pomerance claimed that his practice became restricted solely to wellness office visits, which included patient examination, counseling, providing nonsurgical care and diagnosis, and performing minor biopsies.

In October 1995, Pomerance filed a disability claim with Berkshire based on his occupational restrictions. Because Pomerance was still performing office visits, Berkshire classified his disability as "partial" rather than "total" and handled his claim as one falling under the residual disability rider. Although Pomerance initially objected to this classification, he claims that he did not further object to payment under the residual disability rider because the payments at that time were equal to the full amount of total disability coverage. Moreover, on Berkshire's status update questionnaires, Pomerance indicated that he was "partially," and not "completely," unable to work.

In 2003, Pomerance agreed to take on additional administrative duties for his practice group. These additional duties had the effect of increasing his salary above the threshold to recover for a 100 percent

loss under Berkshire's residual disability rider.[1] Berkshire reduced its disability payments to Pomerance accordingly. Pomerance contacted Berkshire and objected to this reduction, but Berkshire refused to reclassify appellant as totally disabled. Pomerance then filed suit, claiming breach of contract and bad faith refusal to pay the amounts owed. In his complaint, Pomerance alleged that he was totally disabled and thus entitled to the full monthly indemnity benefit provided by the Policies rather than the lower monthly benefit provided by the residual disability rider.

Berkshire moved for summary judgment on both of Pomerance's claims, and Pomerance cross-claimed for partial summary judgment on the breach of contract claim. The trial court granted Berkshire's motion for summary judgment and denied Pomerance's motion. In so doing, the trial court ruled that the Policies' definition of total disability was unambiguous, requiring that Pomerance be incapable of performing all of "his material and substantial duties" in order to qualify for total disability benefits. The trial court further found that because Pomerance continued to perform office visits, he could still perform one of the material, substantial duties of his occupation and thus was not totally disabled as a matter of law.

1. Pomerance contends that the trial court erred in finding that the Policies' definition of total disability unambiguously required that the insured be incapable of performing all of the material and substantial duties of his occupation in order to qualify for benefits. We agree.

When the terms of an insurance contract are clear and unambiguous, the policy terms alone determine the intent of the contracting parties. *North Metro Directories Publishing v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494 (1) (631 SE2d 726) (2006). If a term is undefined in the insurance policy, we look to dictionaries to supply the commonly accepted meaning of the term. *Alea London Ltd. v. Lee*, 286 Ga. App. 390, 393 (1) (649 SE2d 542) (2007). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." (Citation omitted.) *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). The proper construction of a contract is a question of law for a court to decide. *Collier v. State Farm Mut. Auto. Ins. Co.*, 249 Ga. App. 865, 866 (2) (549 SE2d 810) (2001).

---

[1] Payouts under the residual disability rider were reduced if the insured was receiving compensation in excess of 25 percent of his pre-disability pay.

Bearing these principles in mind, we must first determine whether the policy language at issue is clear and unambiguous.[2] We conclude that it is not. As noted, the Policies defined total disability as "the inability to perform the material and substantial duties of [the insured's] occupation." On the one hand, "substantial" can have a qualitative meaning and be defined as "important" or "essential." See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/substantial. On the other hand, "substantial" can have a quantitative meaning and be defined as "considerable in quantity" or "significantly great" in amount. See id. Because "substantial" is susceptible of two alternative meanings, the definition of total disability is rendered ambiguous. Under one reading, an insured is totally disabled if he cannot perform his important and material duties; however, under the alternative reading, an insured is totally disabled if he cannot perform a significantly great amount of his material duties.

As such, we must apply the rules of contract construction in an effort to resolve the ambiguity. See *Hurst*, 266 Ga. at 716 (4). If "substantial" is treated as qualitative in meaning and thus is defined as "important" or "essential," its meaning would be interchangeable with the meaning of "material," a term that also is used in the definition of "total disability" under the Policies. See Black's Law Dictionary (6th ed. 1990), p. 1428 (pointing out that "substantial" can be "[s]ynonymous with material"); Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/material (defining "material" as "having real importance or great consequences"). But, it is a cardinal rule of contract construction "that a court should, if possible, construe a contract so as not to render any of its provisions meaningless" and in a manner that gives effect to all of the contractual terms. *VATACS Group v. HomeSide Lending*, 276 Ga. App. 386, 389 (1) (623 SE2d 534) (2005). See also *Tyson v. McPhail Properties*, 223 Ga. App. 683, 689 (6) (478 SE2d 467) (1996) (finding that the contract "would not have used two different terms in two sequential paragraphs to describe the same thing"). As such, in order to avoid rendering the term "material" as mere surplusage, we must construe

---

[2] We note that there is no Georgia precedent interpreting the language presented in this total disability provision. While Georgia courts have interpreted total disability definitions in other policies, those cases involved "any occupation" disability policies that did not contain the "material and substantial duties" language at issue here. See *Cloer v. Life & Cas. Ins. Co. of Tennessee*, 222 Ga. 798 (152 SE2d 857) (1966); *Mut. Life Ins. Co. of New York v. Barron*, 198 Ga. 1 (30 SE2d 879) (1944); *Metro. Life Ins. Co. v. Johnson*, 194 Ga. 138 (20 SE2d 761) (1942); *Prudential Ins. Co. of America v. South*, 179 Ga. 653 (177 SE 499) (1934); *Cato v. Aetna Life Ins. Co.*, 164 Ga. 392 (138 SE 787) (1927); *Equicor, Inc. v. Stamey*, 216 Ga. App. 375 (454 SE2d 550) (1995). See *Giddens v. Equitable Life Assurance &c.*, 445 F3d 1286, 1299 (II) (D) (3) (11th Cir. 2006) (recognizing distinction of policy language).

the term "substantial" as having the quantitative meaning of "considerable in quantity" or "significantly great" in amount. See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/substantial.

When "substantial" is treated as distinct from the term "material" and thus as qualitative in meaning, it is clear that an insured is totally disabled under the Policies when he is unable to perform a significantly great amount (i.e., most or a vast majority) of the material duties of his occupation. Notably, this interpretation of the total disability definition comports with that of several foreign jurisdictions that have interpreted insurance policies containing similar language. See *Giddens v. Equitable Life Assurance &c.*, 445 F3d 1286, 1296-1301 (II) (D) (2) (11th Cir. 2006); *Dowdle v. Nat. Life Ins. Co.*, 407 F3d 967, 970 (II) (8th Cir. 2005); *Gladstone v. Provident Life &c. Ins. Co.*, No. 1:05-CV-2868-CC, 2007 U. S. Dist. LEXIS 63233 (N.D. Ga. Aug. 17, 2007); *Gross v. UnumProvident Life Ins. Co.*, 319 FSupp.2d 1129, 1136 (III) (A) (C.D. Cal. 2004).[3]

In reaching this conclusion, we reject Berkshire's argument that the residual disability rider, when read in conjunction with the total disability provision, requires that total disability be defined as the inability of the insured to perform *all* of the material duties of his occupation. Rather, we conclude that the language of the rider can be read in a manner consistent with the definition of total disability as the inability to perform *most or a vast majority* of the material duties of the insured's occupation. The rider defines residual disability as the "inability to do one or more of [the insured's] important daily business or professional duties." The rider, when read in conjunction with the definition of total disability, creates "a continuum of disability." *Giddens*, 445 F3d at 1298 (II) (D) (2), 1301 (II) (D) (3).

> At some point, a line must be drawn where the disability becomes so severe, and affects such a large percentage of the insured's material . . . duties, that the disability is total rather than residual. The language of the [r]esidual [d]isability clause does not suggest where that line should be drawn and certainly does not require that it be drawn only where [Berkshire] suggests.

---

[3] We also note that even in cases involving "any occupation" disability policies, Georgia courts have suggested that an insured does not have to be unable to perform all of his important duties before he can be deemed totally disabled. Rather, the insured need only be unable to perform "substantially all" of his important duties. See *Giddens*, 445 F3d at 1300 (II) (D) (3), n. 14 (citing and discussing Georgia "any occupation" cases).

Id. at 1300-1301 (II) (D) (3). As such, contrary to Berkshire's argument, the total disability provision and residual disability rider can be reasonably construed together to provide that if an insured is unable to perform most or a vast majority of his material duties, he is totally disabled; otherwise, he is residually disabled.

In sum, applying the rules of contract construction, we conclude that Pomerance is entitled to total disability benefits under the Policies if he is unable to perform most or a vast majority of the material duties of his occupation. It follows that the trial court erred in concluding that Pomerance had to be unable to perform *all* of "his material and substantial duties" in order to recover total disability benefits. By interpreting the total disability definition in this manner, the trial court clearly construed "substantial" as qualitative in meaning and as synonymous with "material." But, as we have noted, the term "substantial" must be interpreted as quantitative under the circumstances here, and a "substantial" amount is less than all. Accordingly, because its decision was predicated on an erroneous definition of total disability, the trial court erred in granting Berkshire's motion for summary judgment and denying Pomerance's motion for partial summary judgment.

2. Pomerance further argues that the trial court erred in finding that, as a matter of law, he is not totally disabled. Again, we agree.

The record evidence does not conclusively establish whether Pomerance's disability is so severe that it crosses over the line from a residual disability into a total disability. Pomerance claims that as a result of his disability, he is unable to perform most or a vast majority of his material occupational duties, i.e., delivering babies, performing surgeries and C-sections, serving on call, and assisting with emergency room coverage. He admits, however, that he continues to be able to conduct office visits. In this respect, the 24 hours per week that Pomerance devotes to performing office visits has remained the same before and after his disability.

On the one hand, Pomerance contends that office visits reflected only ten percent of his pre-disability occupational duties, and a partner in his practice deposed that there was a "night and day differen[ce]" in Pomerance's practice following his disability. On the other hand, Berkshire points to evidence indicating that Pomerance spent as much as half of his time prior to his disability performing the exact same office-based duties that he continues to perform within the same amount of time, and that the office-based services comprised the majority of his patient base. The evidence therefore establishes the existence of a genuine issue of material fact over whether Pomerance is unable to perform most or a vast majority of the material duties of his occupation. A jury must resolve whether

Pomerance is totally disabled. Hence, the trial court's decision granting summary judgment in favor of Berkshire on this issue was erroneous. See *Gladstone*, Case No. 1:05-CV-2868-CC, *7-10 (III) (A).

For these reasons, we reverse the trial court's grant of Berkshire's motion for summary judgment; reverse the denial of Pomerance's motion for partial summary judgment; and remand the case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Blackburn, P. J., concurs. Ruffin, J., concurs in the judgment only.*

DECIDED NOVEMBER 20, 2007 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*David A. Webster*, for appellant.
*Smith Moore, Michael A. Coval, Aaron E. Pohlmann*, for appellee.