A09A0081. INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA v. APAC-SOUTHEAST, INC. et al.
(677 SE2d 734)

BERNES, Judge.

This appeal concerns the construction of an insurance contract resolved by the trial court on summary judgment. The question presented is whether the plaintiff, APAC-Southeast, Inc., is an additional insured under an excess liability insurance policy issued by one of the defendants, the Insurance Company of the State of Pennsylvania ("ICSOP"). The trial court answered the question in the affirmative. We agree and therefore affirm.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party. *Northwest Carpets v. First Nat. Bank of Chatsworth*, 280 Ga. 535, 538 (1) (630 SE2d 407) (2006). "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citations omitted.) *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994). Mindful of these principles, we turn to the record here.

*The Subcontract.* APAC is a transportation construction contractor engaged in the business of road construction and paving. In 2002, APAC entered into a contract with the Georgia Department of Transportation to serve as the general contractor on a road rehabilitation project in Monroe County (the "Contract"). Later that year, APAC entered into a subcontract with Costello Industries, Inc., under which Costello agreed to perform part of the road rehabilitation work (the "Subcontract"). Pursuant to Paragraph 5 of the Subcontract, Costello was required to procure insurance on behalf of APAC:

5. **INSURANCE:** [Costello] shall, and shall cause each of its subcontractors to, maintain (i) worker's compensation and employer's liability insurance to fully protect against loss from personal injury, including death, to any of their employees, (ii) comprehensive automobile liability, general

liability (including blasting, collapse and underground, product liability and completed operations coverages), contractual liability, owners and contractor's liability, builders risk, and property damage insurance, (iii) and any and all other insurance required by the Contract. All such insurance shall be written by insurers acceptable to [APAC], having minimum coverage of $1,000,000 combined single limit, on an "occurrence" basis and not on a "claims made" basis. All policies, except for worker's compensation policies, shall name [APAC] as an additional insured with primary coverage (with any other third-party coverage provided for [APAC] to be deemed as excess only) and shall indemnify, defend and protect [APAC] from all claims, expenses and liabilities in any way connected with any act or omission of [Costello], its invitees, or any person performing Work directly or indirectly on behalf of [Costello], regardless of whether [APAC] is partially at fault. . . . Before starting the Work, and at any time [APAC] so requests, [Costello] shall furnish certificates satisfactory to [APAC] evidencing the required insurance. . . .

*The Liberty Mutual Policy.* After executing the Subcontract, Costello procured various insurance policies through an independent insurance broker, Lockton Insurance Agency, Inc., including a commercial general liability insurance policy issued by Liberty Mutual Insurance Company (the "Liberty Mutual Policy"). The Liberty Mutual Policy provided primary coverage up to a limit of $1 million per each "occurrence."

The Liberty Mutual Policy also contained an endorsement entitled "ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS," which modified the definition of "Who is an Insured" under the policy (the "Additional Insured Endorsement"). The Additional Insured Endorsement provided in relevant part:

### SCHEDULE

**Name of Person or Organization:**

Any Person or Organization with whom you have a written contract that requires them to be named as additional insured.

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in

the Schedule, or, if no person or organization is shown in the Schedule, then any person or organization to whom you are obligated by a written agreement to procure additional insur[ance] coverage, provided that:

(a) the "bodily injury", "property damage", "personal injury" or ["]advertising injury" giving rise to liability occurs subsequent to the execution of the agreement; and

(b) the written agreement is in effect at the time of the "bodily injury", "property damage", "personal injury" or "advertising injury" for which coverage is sought.

That person or organization shall be referred to as the "Additional Insured."

. . .

The insurance provided by this endorsement applies only to coverages and limits of insurance required by written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy.[1]

*The Excess Policy.* In addition to the Liberty Mutual Policy, Costello had Lockton procure an excess liability insurance policy issued by ICSOP (the "Excess Policy"). The Excess Policy provided an additional $10 million in coverage per each "occurrence," over and above the coverage provided in the underlying insurance policies issued to Costello, including the Liberty Mutual Policy. The named insured in the Excess Policy was Costello, and the Excess Policy was silent as to coverage for additional insureds. Instead, the Excess Policy contained a "following form" provision,[2] which stated: "Except for the terms, definitions, conditions and exclusions of this policy, the coverage provided by this policy shall follow the terms, definitions, conditions and exclusions of the [Liberty Mutual Policy]." In light of this provision, the definition of additional insured contained in the Additional Insured Endorsement of the Liberty Mutual Policy was incorporated into and made part of the Excess Policy. See generally *Coleman Co. v. California Union Ins. Co.*, 960 F2d 1529, 1533-1534 (10th Cir. 1992); *Home Ins. Co. v. American Home Products Corp.*, 902 F2d 1111, 1113 (2d Cir. 1990).

---

[1] Additional insured endorsements generally take one of two forms: (1) specific endorsements in which the additional insured is named explicitly, or (2) "omnibus additional insured" endorsements in which the specific additional insured is not named but instead meets a definition provided. It is undisputed that the Additional Insured Endorsement is of the latter type.

[2] A "following form" excess insurance policy incorporates by reference the terms and conditions of an underlying primary insurance policy as if those terms and conditions were its own. See *Coleman Co. v. California Union Ins. Co.*, 960 F2d 1529, 1533-1534 (10th Cir. 1992); *Home Ins. Co. v. American Home Products Corp.*, 902 F2d 1111, 1113 (2d Cir. 1990).

*The Graves Action and Settlement.* In 2003, three people were seriously injured while driving through the construction zone where Costello was performing its work under the Subcontract. They filed suit against a number of defendants, including APAC and Costello (the "Graves Action"). As a result, APAC demanded that Costello indemnify and defend APAC from any and all costs incurred in the Graves Action. Liberty Mutual acknowledged that APAC was an additional insured under the Liberty Mutual Policy and agreed to undertake APAC's defense subject to a reservation of rights. ICSOP, in contrast, failed to acknowledge APAC as an additional insured under the Excess Policy and did not assist in the defense. Ultimately, APAC settled the Graves Action, but without any contribution from ICSOP to the settlement.

*The Present Lawsuit.* After ICSOP failed to contribute to the settlement in the Graves Action, APAC brought the present suit against ICSOP, Lockton, Costello, and Costello Southeast, Inc. APAC alleged that it was an additional insured under the Excess Policy entitled to $10 million in coverage. Among other things, APAC prayed for damages as a result of ICSOP's alleged failure to settle the Graves Action within the policy limits of the Excess Policy and also alleged bad faith for ICSOP's failure to defend APAC.

The trial court appointed a special master to the case. APAC, Lockton, and ICSOP each moved for summary judgment on the limited issue of whether APAC was an additional insured under the Excess Policy. APAC and Lockton contended that APAC was an additional insured under the Excess Policy; ICSOP asserted that APAC was not.

After receiving extensive briefing and hearing oral argument, the special master entered proposed findings of fact and conclusions of law. The special master recommended that the trial court rule that APAC was an additional insured under the Excess Policy based on the language of the Subcontract, the language of the Additional Insured Endorsement that was incorporated into the Excess Policy, and the applicable rules of insurance contract construction. The trial court adopted the special master's recommendations.

On appeal, ICSOP contends that the trial court erred in concluding that APAC was an additional insured under the Excess Policy. In particular, ICSOP maintains that the Additional Insured Endorsement, incorporated into the Excess Policy, extended additional insured coverage to a noninsured "only to coverages and limits of insurance required by written agreement." Consequently, ICSOP maintains that whether APAC was an additional insured under the Excess Policy turned on what "coverages" and "limits of insurance" Costello was required to procure under Paragraph 5 of the Subcontract. Because the Subcontract did not require Costello to procure a

general liability policy with limits in excess of $1 million, ICSOP asserts that the Excess Policy did not provide additional insured coverage to APAC.

"Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Citation and punctuation omitted.) *Scottsdale Ins. Co. v. Great American Assurance Co.*, 271 Ga. App. 695, 696 (1) (610 SE2d 558) (2005). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." (Citation and punctuation omitted.) *Pomerance v. Berkshire Life Ins. Co. of America*, 288 Ga. App. 491, 493 (1) (654 SE2d 638) (2007). The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide. *Collier v. State Farm &c. Ins. Co.*, 249 Ga. App. 865, 866 (2) (549 SE2d 810) (2001). Applying these rules of interpretation to the case at hand, we discern no error by the trial court.

As an initial matter, we agree with ICSOP that additional insured coverage under the Excess Policy extends "only to coverages and limits of insurance required by written agreement." We likewise agree that Paragraph 5 of the Subcontract does not require general liability coverage in excess of $1 million, and, therefore, did not require Costello to procure the Excess Policy. But that does not end the inquiry given the unique language used by the parties in the Subcontract. Significantly, while Paragraph 5 of the Subcontract did not require Costello to procure excess insurance coverage, *it did require Costello to procure additional insured coverage on an excess policy*, in the event that Costello chose in its discretion, as it did here, to procure such a policy.

As previously noted, Paragraph 5 of the Subcontract provides in relevant part:

> *All policies*, except for worker's compensation policies, shall name [APAC] as an additional insured with primary coverage (with any other third-party coverage provided for [APAC] to be deemed as excess only) and shall indemnify, defend and protect [APAC] from all claims, expenses and liabilities in any way connected with any act or omission of [Costello], its invitees, or any person performing Work directly or indirectly on behalf of [Costello], regardless of whether [APAC] is partially at fault. . . . Before starting the Work, and at any time [APAC] so requests, [Costello] shall

furnish certificates satisfactory to [APAC] evidencing the *required insurance.*

(Emphasis supplied.) Thus, Paragraph 5 obligated Costello to name APAC as an additional insured on "all policies" it procured relating to the road rehabilitation project, excluding workers' compensation policies. And by its plain terms, "all policies" included within its expansive ambit any comprehensive general liability policies providing excess coverage that were procured by Costello.[3] Costello, therefore, was obligated to name APAC as an additional insured on the Excess Policy.

ICSOP contends, however, that when read in context of the sentences before and after it, the term "all policies" in Paragraph 5 of the Subcontract was limited to the specific types of policies that Costello was required to procure under the Subcontract. See *Tuten v. City of Brunswick*, 262 Ga. 399, 401 (2) (b), n. 1 (418 SE2d 367) (1992) ("Words, like people, are judged by the company they keep. Noscitur a sociis. The critical phrase thus must be gauged by the words surrounding it.") (citations, punctuation and emphasis omitted). Consequently, ICSOP maintains that because Paragraph 5 did not require Costello to procure comprehensive general liability insurance in excess of $1 million of coverage, the Excess Policy was not included within the meaning of "all policies" for which additional insured coverage had to be obtained.

We are unpersuaded. It is a cardinal rule of construction that a contract should be construed in a manner that gives effect to all of the contractual terms. *Pomerance*, 288 Ga. App. at 494 (1). Following the "all policies" language, the parties go on to refer specifically in Paragraph 5 of the Subcontract to "required insurance" in setting forth other duties placed upon Costello relating to insurance procurement. Thus, if the parties wanted to limit additional insured coverage to policies specifically required under the Subcontract, they clearly knew how to do so. Put another way, the parties would not have used two different terms in short sequence within the same paragraph to mean the exact same thing. In order to give effect to all of the contractual terms, "all policies" thus must be construed as greater in scope than "required insurance" under the Subcontract. See *Pomerance*, 288 Ga. App. at 494-495 (1) (rejecting interpretation of the word "substantial" that would render it interchangeable with

---

[3] ICSOP argues that interpreting "all policies" in this manner leads to absurd results because it would require APAC to be named as an additional insured on Costello's health insurance plan. This argument fails, however, because "all policies" clearly refers to policies relating to the road rehabilitation project addressed in the Subcontract, not more generally to all insurance policies obtained by Costello as part of its construction business.

the word "material" used in the same policy); *Tyson v. McPhail Properties*, 223 Ga. App. 683, 689 (6) (478 SE2d 467) (1996) (concluding that the contract "would not have used two different terms in two sequential paragraphs to describe the same thing").

Limiting additional insured coverage to policies required under the Subcontract, moreover, would undermine Costello's ability to ensure that it meets its contractual obligation, also set forth in Paragraph 5, to "indemnify, defend and protect [APAC] from *all* claims, expenses and liabilities" — a potentially expansive obligation not limited to a particular dollar amount. (Emphasis supplied.) Since an insurance contract should be construed in a manner that harmonizes, rather than internally undermines, its various provisions, *Chanin v. Tharrington*, 222 Ga. App. 890 (476 SE2d 651) (1996), we decline to construe "all policies" in the narrow manner advocated by ICSOP.

ICSOP also focuses on the language in Paragraph 5 of the Subcontract requiring that APAC be named as an additional insured "with primary coverage (with any other third-party coverage provided for [APAC] to be deemed as excess only)." According to ICSOP, inclusion of a reference to "primary coverage" in the "all policies" sentence of Paragraph 5 shows that the term "all policies" cannot be construed as encompassing excess insurance policies, since such policies by definition do not provide primary coverage. Again, we disagree. When read in context, the "primary coverage" reference, which is immediately followed by the third-party coverage reference, is simply intended to require that all of the insurance policies procured by Costello naming APAC as an additional insured be exhausted before any separate, third-party policies *procured by APAC* are reached. Hence, the reference to "primary coverage" is not intended to draw a distinction between primary and excess policies *procured by Costello*.

Finally, ICSOP relies heavily on *Ryder Integrated Logistics v. BellSouth Telecommunications*, 277 Ga. App. 679 (627 SE2d 358) (2006), revd in part on other grounds, 281 Ga. 736 (642 SE2d 695) (2007), to support its position. In that case, we relied upon the specific language of the contract between the parties to conclude that the parties did not intend to name BellSouth as an additional insured on the excess policy procured by Ryder. Id. at 686 (4) (b). The contractual language in *Ryder Integrated Logistics*, however, was dramatically different from the "all policies" language used in Paragraph 5 of the Subcontract. Specifically, the contract in that case stated: "*All commercial general liability policies required herein* shall name (BellSouth) as an additional insured with respect to work performed under this [contract]." (Emphasis supplied.) Id. at 681. As such, in *Ryder Integrated Logistics* it was clear that the parties

intended to limit additional insured coverage to the specific insurance required in the parties' contract. In contrast, the parties in the present case agreed that "all policies" procured by Costello relating to the road rehabilitation project, except for workers' compensation policies, would name APAC as an additional insured. Hence, the difference in contractual language distinguishes *Ryder Integrated Logistics* from the present case.

For these combined reasons, we conclude that Paragraph 5 of the Subcontract did not require excess policy coverage but required additional insured coverage to be obtained for such a policy once procured by Costello, as occurred in this case. Yet, as already pointed out, the Additional Insured Endorsement, incorporated into the Excess Policy, extended additional insured coverage to a noninsured "only to coverages and limits of insurance required by written agreement." The question that must be answered, therefore, is whether the Additional Insured Endorsement extended additional insured coverage in the specific circumstance where the parties' underlying written agreement did not require excess insurance coverage, but required additional insured coverage for any excess policy that was procured. We conclude that the Additional Insured Endorsement is ambiguous as to whether coverage is provided in this unique context.

Under the applicable rules of contract construction, "[w]hen the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him with coverage." *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (1) (601 SE2d 363) (2004). See *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333, 334-335 (1) (380 SE2d 686) (1989) ("[I]f an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured."). We thus construe the Additional Insured Endorsement in the light most favorable to APAC and resolve the ambiguity in the policy language in favor of extending APAC additional insured coverage under the Excess Policy. See id.

Based on the language of Paragraph 5 of the Subcontract, the language of the Additional Insured Endorsement incorporated into the Excess Policy, and the rules of contract construction, the trial court did not err in concluding that APAC was covered as an additional insured under the Excess Policy. Accordingly, we affirm the trial court's order granting summary judgment to APAC and Costello and denying summary judgment to ICSOP on this coverage issue.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED APRIL 17, 2009.

*Wargo & French, Michael S. French*, for appellant.
*Balch & Bingham, Kenneth A. Khoury, James D. Meadows, Weinberg, Wheeler, Hudgins, Gunn & Dial, Earl W. Gunn, Scott P. Kerew, M. Craig Hall*, for appellees.