### A11A1169. GLASS et al. v. GATES et al.
(716 SE2d 611)

BARNES, Presiding Judge.

John Glass, an inmate in the custody of Troup County, was killed while operating a tractor on a prison work detail supervised by correctional officer Donrell Gates. The plaintiffs brought this wrongful death and survival action against Troup County and Gates, in his individual and official capacities, alleging that Glass's injury and death were the result of negligence in the supervision of the work detail. The defendants moved for summary judgment, contending that the undisputed evidence showed that the plaintiffs' claims against the County were barred by sovereign immunity and their claims against Gates were barred by official immunity. The trial court granted the defendants' motion.

There are two primary issues in this appeal from the trial court's grant of summary judgment to the defendants. The first issue is whether, in determining if a local government has waived its sovereign immunity through the voluntary purchase of liability insurance under the second sentence of OCGA § 33-24-51 (b), courts should look to the definition of "motor vehicle" provided in OCGA § 36-92-1. We conclude that courts should not rely upon that statutory definition, which applies in the more narrow circumstance where the sovereign immunity of a local government is mandatorily waived under the framework provided in Chapter 92 of Title 36. Instead, as our precedent makes clear, "any motor vehicle" as used in OCGA § 33-24-51 (a), which is applicable to the waiver of sovereign immunity under the second sentence of OCGA § 33-24-51 (b), is defined as a vehicle that is capable of being driven on the public roads that is covered by a liability insurance policy purchased by the local government. Because the trial court applied the wrong definition of "motor vehicle," we vacate the grant of summary judgment to the County and remand for the trial court to apply the proper definition in determining whether summary judgment is appropriate.

The second issue on appeal is whether there was any evidence that Gates failed to carry out a ministerial rather than a discretionary act. We conclude that there was evidence in the record that Gates failed to carry out a ministerial act, and because the trial court concluded otherwise, we reverse the grant of summary judgment to Gates on the claims brought against him in his individual capacity.

On appeal from the grant of summary judgment, we conduct a de

novo review of the record, and we construe the facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Ins. Co. &c. of Pa. v. APAC-Southeast*, 297 Ga. App. 553 (677 SE2d 734) (2009). Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c).

> On summary judgment, a trial court is not authorized to resolve disputed issues of material fact. A trial court is authorized only to determine whether disputed issues of material fact remain. If, and only if, no disputed issue of material fact remains is the trial court authorized to grant summary judgment.

(Citation omitted.) *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 833 (1) (691 SE2d 852) (2010). With these principles in mind, we turn to the record in this case.

Viewed in the light most favorable to the plaintiffs, the evidence showed that on November 14, 2007, Glass was incarcerated at the Troup County Correctional Institute, a work camp for state and county prisoners. Glass was classified at a minimum security level and was due to be released from custody within three days.

On the morning in question, a crew of six prisoners from the work camp were cutting grass and picking up trash along a road in Troup County. Members of the crew included Glass and Tony Smith, both of whom were operating county-owned tractors with bush hogs attached to them.

Glass and Smith did have some prior experience operating tractors and bush hogs. However, Troup County had no program in place to train prisoners on the operation of tractors or bush hogs, and there is no evidence that prisoners were ever shown or provided access to the operator's manual for the equipment.

Glass, Smith, and the other prisoners were under the supervision of correctional officer Gates. Although Gates received one week of on-the-job training as a work detail supervisor in early October 2007, Troup County provided no formal training to its work detail supervisors regarding the safe operation of tractors or bush hogs.

While cutting in a ditch against an embankment, Smith's tractor became stuck. According to the plaintiffs, Troup County had an unwritten departmental policy to which Gates was required to comply when a tractor became stuck. Under the policy, if a tractor became stuck in a ditch while cutting grass, the work detail supervisor was to contact the work camp and request that a service truck be dispatched to pull the tractor out.

Upon learning that Smith's tractor was stuck, Gates, who had been observing from inside the county transport van, drove to where Glass and Smith were located. Although a prisoner inside the van asked Gates if he wanted to call or radio back to the work camp for help, Gates instructed that a chain be taken from the back of the van and used by Glass and Smith to free Smith's tractor.[1] With that instruction given, a prisoner grabbed the chain from the van, and Glass and Smith attached it to each of the two tractors. Gates allowed the tractors to be attached so that they faced each other; the plan was for Glass to put his tractor in reverse and pull Smith's tractor out of the ditch. As a result of this positioning, the safety screen on the back of Glass's tractor did not come between Glass and Smith and thus afforded Glass no protection from flying debris.

Once the chain was attached, Gates backed the van several feet away from the two tractors in case rocks were propelled from underneath Smith's tractor. Indeed, departmental guidelines required all work detail laborers to be at least 50 feet behind an operating tractor. As Glass was using his tractor in an effort to free Smith's tractor from the ditch, Smith engaged the bush hog attached to his tractor, causing grass and dirt to fly into the air.[2] However, according to a prisoner who was watching from the van, Gates was not supervising or paying attention to Smith or Glass at the time; consequently, Gates made no effort to instruct Smith to turn off his bush hog while being pulled. At that point, a rock flew out from underneath Smith's bush hog and struck Glass in the throat. Glass began to bleed profusely and quickly lost consciousness.

Gates drove up to where Glass was located, exited from the van, and called 911 on his cell phone within a minute of the accident. Gates also called the work camp and reported what had occurred. He told the other prisoners on the work detail that "it was [his] fault" and that "he should have called back to the camp for a truck." An

---

[1] In his deposition, Gates testified that he first made several attempts to contact the work camp on his cell phone, but was unsuccessful in doing so because of the remoteness of the location of the work detail. However, the plaintiffs presented evidence calling into question the credibility of Gates's testimony, including evidence, discussed infra, that Gates was able to use his cell phone immediately after the accident occurred to successfully contact the work camp and later made an admission to other prisoners that he should have called the camp and requested a service truck. Accordingly, there was a genuine issue of material fact over whether Gates attempted to contact the work camp and request a service truck before instructing Glass and Smith to free the tractor themselves.

[2] The defendants contend that the evidence shows that Glass gestured with his hands for Smith to turn on his bush hog as he was being pulled, and that Glass's gesture constituted an intervening act that superseded any negligence by Gates. But the plaintiffs presented the affidavit of another prisoner on the work detail reflecting that Smith made the decision on his own to turn on his bush hog because he wanted to go ahead and cut the grass in the ditch. Consequently, a genuine issue of material fact exists over whether Glass gestured for Smith to turn on his bush hog.

ambulance arrived and transported Glass to the hospital, but he was pronounced dead later than morning.

At the time of Glass's death, Troup County had a general liability insurance policy and an auto liability insurance policy in place, both of which provided liability coverage of up to $1,000,000 for certain occurrences. The parties dispute whether the policies provide coverage for the tractor and bush hog that Smith was operating.

Glass's minor son and the executor of his estate commenced this wrongful death and survival action against Troup County and Gates, in his individual and official capacities, alleging that Glass's injury and death were the result of negligence in the training of work detail supervisors, negligence in the supervision of work detail prisoners, and the negligent failure of Gates to comply with County policy. The plaintiffs also alleged that Smith's operation of his tractor and bush hog was for the benefit and under the direction of the County, and thus that any negligence by him was attributable to the County as if he were an employee.

The plaintiffs maintained that the County had waived its sovereign immunity under OCGA § 33-24-51 through the purchase of the two liability insurance policies. They further claimed that Gates was not entitled to official immunity because he had failed to follow a specific County policy that imposed a ministerial duty upon him to contact the work camp and wait for the assistance of a truck when a tractor became stuck in a ditch. As a result, the plaintiffs contended that they could recover monetary damages from the County and Gates.

The defendants answered and later moved for summary judgment, contending that the undisputed evidence showed that the plaintiffs' claims against the County were barred by sovereign immunity and that their claims against Gates were barred by official immunity. The trial court granted the motion.

In granting summary judgment to the County, the trial court reasoned that "in determining whether a county [has] waived its sovereign immunity under OCGA § 33-24-51 by purchasing liability insurance to cover personal injury arising out of the use of a motor vehicle, courts must look to the definition of motor vehicle as provided in [OCGA] § 36-92-1." The trial court then held that any insurance purchased by the County that might cover the tractor or bush hog did not waive the County's sovereign immunity under OCGA § 33-24-51 because neither a tractor nor a bush hog constitutes a "motor vehicle" under OCGA § 36-92-1.

In granting summary judgment to Gates, the trial court concluded that the undisputed evidence showed that he was entitled to official immunity. According to the trial court, the uncontroverted

evidence showed that Gates was engaged in a discretionary act in supervising the work detail and did not act with actual malice; thus, official immunity shielded him from personal liability.

1. The plaintiffs contend that the trial court erred in granting summary judgment to the County on the ground that it had not waived its sovereign immunity under OCGA § 33-24-51.[3] Specifically, the plaintiffs maintain that the trial court erred in concluding that the legislature intended for the definition of "motor vehicle" found in OCGA § 36-92-1 to apply to OCGA § 33-24-51.[4] Instead, the plaintiffs argue that "motor vehicle" in OCGA § 33-24-51 should be construed more broadly to include tractors and bush hogs if the underlying liability insurance policies purchased by the County cover that type of equipment.

"Under our Constitution, Georgia counties enjoy sovereign immunity, and can be sued only if they have waived their immunity." (Citations omitted.) *Strength v. Lovett*, 311 Ga. App. 35, 38 (1) (714 SE2d 723) (2011). See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); OCGA § 36-1-4. "[S]overeign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and [describes] the extent of such waiver." *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994). A waiver of sovereign immunity "must be established by the party seeking to benefit from the waiver." (Citations and punctuation omitted.) *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 788 (1) (456 SE2d 97) (1995).

OCGA § 33-24-51 meets the criteria for a statutory waiver of sovereign immunity. See *Hewell v. Walton County*, 292 Ga. App. 510, 512 (1) (664 SE2d 875) (2008). Subsection (a) of that statute provides:

> A municipal corporation, a county, or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of *any motor vehicle* by the municipal corporation, county, or any other political subdivision of

---

[3] The plaintiffs' claims against Gates in his official capacity are considered claims against the County. See *Gilbert v. Richardson*, 264 Ga. 744, 746 (2), n. 4 (452 SE2d 476) (1994). Hence, if the claims against the County are barred by sovereign immunity, the claims against Gates in his official capacity are likewise barred.

[4] The plaintiffs do not dispute that neither a tractor nor a bush hog constitutes a "motor vehicle" as defined in OCGA § 36-92-1.

> this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

(Emphasis supplied.) In its current form, subsection (b) of OCGA § 33-24-51 then provides that sovereign immunity is waived in two situations. The first sentence of subsection (b) provides that sovereign immunity is waived for losses arising out of claims for the negligent use of a "covered motor vehicle" as provided in OCGA § 36-92-2. The second sentence of subsection (b) provides that sovereign immunity is waived where a local government purchases insurance on "any motor vehicle" as authorized in subsection (a) of the statute, if the insurance covers "the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2." Given that the plaintiffs do not dispute that neither a tractor nor a bush hog constitutes a "covered motor vehicle" under the first sentence of subsection (b), we only address in this opinion whether a tractor or a bush hog constitutes "any motor vehicle," the phrase from OCGA § 33-24-51 (a) applicable to the second sentence of subsection (b).

In *Crider v. Zurich Ins. Co.*, 222 Ga. App. 177, 179-180 (2) (474 SE2d 89) (1996), we rejected the narrow definition of "motor vehicle" contained in Georgia's automobile insurance statutes, concluding that a vehicle does not have to be designed primarily for use on public roads to constitute "any motor vehicle" under OCGA § 33-24-51. We concluded that a backhoe — which was capable of being driven on a public road but was primarily used for moving and lifting objects — constituted a "motor vehicle" under OCGA § 33-24-51, and that the county had waived its sovereign immunity pursuant to the statute by purchasing general liability insurance that covered the backhoe. Id.

Pursuant to *Crider*, we have held that "any motor vehicle" as used in OCGA § 33-24-51 refers to a vehicle that (1) is capable of being driven on the public roads and (2) is covered by a liability insurance policy purchased by the local government entity. See *McDuffie v. Coweta County*, 299 Ga. App. 500, 503 (1) (682 SE2d 609) (2009). Compare *Pate v. Turner County*, 162 Ga. App. 463, 463-464 (291 SE2d 400) (1982) (landfill compactor with metal wheels that required it to be driven on soil or dirt rather than a hard surface such as a road did not constitute a "motor vehicle" under predecessor statute to OCGA § 33-24-51). Applying this test, we have concluded that "any motor vehicle" as used in OCGA § 33-24-51 can include tractors with bush hogs attached to them if the relevant insurance policies cover those types of vehicles. See *McDuffie*, 299 Ga. App. at

503 (1) (tractor constituted a "motor vehicle" under OCGA § 33-24-51); *Simmons v. Coweta County*, 229 Ga. App. 550, 552 (a) (494 SE2d 362) (1997), rev'd in part on other grounds, *Coweta County v. Simmons*, 269 Ga. 694 (507 SE2d 440) (1998) (tractor with bush hog attached qualified as a "motor vehicle" under OCGA § 33-24-51). Cf. *Williams v. Whitfield County*, 289 Ga. App. 301, 303 (656 SE2d 584) (2008) (Caterpillar excavator qualified as "motor vehicle" under OCGA § 33-24-51). Therefore, under our precedent, "any motor vehicle" in OCGA § 33-24-51 is construed broadly to include tractors and bush hogs covered by a local government's liability insurance policies. Any other result would mean that the local government entity had paid premiums for a liability insurance policy providing overly broad and unnecessary coverage.

However, the County argues that our precedent, which construed an earlier version of OCGA § 33-24-51 (b), has been superceded by the revisions to the statute in 2002, which became effective on January 1, 2005. See Ga. L. 2002, p. 579, §§ 1, 5. According to the County, these revisions reflect a legislative intent to apply the definition of "motor vehicle" found in OCGA § 36-92-1 (6) to the waiver of a local government's sovereign immunity under the second sentence of OCGA § 33-24-51 (b) when it purchases insurance on "any motor vehicle" as authorized in OCGA § 33-24-51 (a).[5] We are unpersuaded.

Before the 2002 revisions in sovereign immunity law, local governments could voluntarily waive their immunity by purchasing insurance coverage for motor vehicles "to the extent of the amount of insurance so purchased." OCGA § 33-24-51 (b) (2001). There were no statutory provisions requiring local governments to purchase a certain amount of insurance or waive their immunity up to a certain specified limit, which meant that a plaintiff's recovery against a local government could vary from county to county depending on the insurance coverage purchased. Our Supreme Court decried this situation in *Cameron v. Lang*, 274 Ga. 122, 127 (3) (549 SE2d 341) (2001), and called for the legislature to act:

[T]he failure to require cities and counties to maintain

---

[5] In *Hewell*, 292 Ga. App. at 512-513 (1), we concluded that the plaintiff had sufficiently pled that a portable tar kettle machine was a "motor vehicle" under the current version of OCGA § 33-24-51 (b) to survive the defendant's motion for judgment on the pleadings. In reaching this conclusion, we cited, without elaboration, both to the definition of "motor vehicle" in OCGA § 36-92-1 (6) and to our precedent defining that term under the earlier version of the statute. See id. at 513 (1). Because the portable tar kettle machine constituted a "motor vehicle" under *either* definition given the allegations of the complaint, we did not address or resolve whether the definition of "motor vehicle" in OCGA § 36-92-1 (6) had to be met for a waiver to occur under the second sentence of OCGA § 33-24-51 (b).

> liability insurance for the use of motor vehicles on official business has created inconsistent and often unfair results. The ability of a plaintiff to pierce the immunity of a government employer too often depends on the city or county's decision to purchase liability insurance. . . . Due to the . . . choice of many local governments to forego purchasing liability insurance, we urge the legislature to remove the city and county's discretion and require them to procure liability insurance for the operation of their vehicles.

Less than a year later, our legislature passed House Bill No. 1128, which revised several provisions of the Georgia Code, including OCGA § 33-24-51 (b), and added Chapter 92 to Title 36, entitled "Local Government Entities," including OCGA §§ 36-92-1 and 36-92-2 (the "2002 Act"). See Ga. L. 2002, p. 579, § 1. See David Walker, Note, Peach Sheets, Insurance, 19 Ga. St. U. L. Rev. 243, 244-247 (2002). Chapter 92 creates a framework under which the sovereign immunity of local governments is mandatorily waived for the operation of their motor vehicles under certain specific circumstances.

OCGA § 36-92-1, created as part of the 2002 Act, defines the terms "[a]s used in this chapter," i.e., Chapter 92 of Title 36. Among other terms, "motor vehicle" is defined as "any automobile, bus, motorcycle, truck, trailer, or semitrailer, including its equipment, and any other equipment permanently attached thereto, designed or licensed for use on the public streets, roads, and highways of the state." OCGA § 36-92-1 (6). A "covered motor vehicle" is defined as any motor vehicle owned, leased, or rented by a local government entity. OCGA § 36-92-1 (2).

OCGA § 36-92-2, also created as part of the 2002 Act, sets certain monetary limits for the mandatory waiver of sovereign immunity by local government entities that vary based upon the date that the incident involving a "covered motor vehicle" occurred. The statute provides in relevant part:

> (a) The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived up to the following limits:
>
> (1) $100,000.00 because of bodily injury or death of any one person in any one occurrence, an aggregate amount of $300,000.00 because of bodily injury or death of two or more persons in any one occurrence, and $50,000.00 because of injury to or destruction of property in any one occurrence, for incidents occurring on or after January 1, 2005, and until December 31, 2006;

(2) $250,000.00 because of bodily injury or death of any one person in any one occurrence, an aggregate amount of $450,000.00 because of bodily injury or death of two or more persons in any one occurrence, and $50,000.00 because of injury to or destruction of property in any one occurrence, for incidents occurring on or after January 1, 2007, and until December 31, 2007; and

(3) $500,000.00 because of bodily injury or death of any one person in any one occurrence, an aggregate amount of $700,000.00 because of bodily injury or death of two or more persons in any one occurrence, and $50,000.00 because of injury to or destruction of property in any one occurrence, for incidents occurring on or after January 1, 2008.

(b) The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived only to the extent and in the manner provided in this chapter and only with respect to actions brought in the courts of this state. *This chapter shall not be construed to affect any claim or cause of action otherwise permitted by law and for which the defense of sovereign immunity is not available.*

. . .

(Emphasis supplied.)

Additionally, the 2002 Act left subsection (a) of OCGA § 33-24-51 intact but revised subsection (b) to add a new first sentence: "The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2."[6] OCGA § 33-24-51 (b). Subsection (b) also was revised to state that immunity is waived when the amount of insurance purchased by the local government entity is "in an amount greater than the amount of immunity waived as in Code Section 36-92-2."

In light of these revisions, we must determine whether the 2002 Act was intended by the legislature to change the definition of "any motor vehicle" found in OCGA § 33-24-51 (a), applicable to the waiver of sovereign immunity under the second sentence of OCGA §

---

[6] The former version of subsection (b) provided in relevant part:

Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased.

OCGA § 33-24-51 (b) (2001).

33-24-51 (b), from the broad definition previously adopted by this Court to the more narrow definition found in OCGA § 36-92-1 (6). We begin by noting that under well-settled rules of statutory construction, "[w]hen the language of a statute is plain and unambiguous and not leading to an absurd result, it evidences the legislative intent which is not to be contravened." *Ga. Dept. of Transp. v. Evans*, 269 Ga. 400, 401 (499 SE2d 321) (1998). In other words, "we always must presume that the General Assembly means what it says and says what it means." *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 577 (1) (707 SE2d 921) (2011).

Here, the plain and unambiguous language of OCGA §§ 36-92-1 and 36-92-2 reflects that the definition of "motor vehicle" applicable to Chapter 92 of Title 36 was not intended to narrow the meaning of "any motor vehicle" found in OCGA § 33-24-51 (a). As previously noted, OCGA § 36-92-1 expressly states that it is defining terms "[a]s used in this chapter." In turn, OCGA § 36-92-2 (b) expressly states that "[t]his chapter shall not be construed to affect any claim or cause of action otherwise permitted by law and for which the defense of sovereign immunity is not available." In light of this plain and unambiguous statutory language, it is clear that — other than for losses arising out of claims for the negligent use of a "covered motor vehicle" under the first sentence of OCGA § 33-24-51 (b) — the legislature did not intend for Chapter 92 of Title 36, which necessarily includes the definition of "motor vehicle" found in OCGA § 36-92-1 (6), to "affect" OCGA § 33-24-51, which provides a cause of action "otherwise permitted by law . . . for which the defense of sovereign immunity is not available." Any other reading of these statutory provisions would render the operative language in OCGA §§ 36-92-1 and 36-92-2 (b) mere surplusage, a result that clearly should be avoided. See *Porter v. Food Giant*, 198 Ga. App. 736, 738 (1) (402 SE2d 766) (1991) ("It is contrary to the generally accepted principles for construing statutes to 'read out' any part of the statute as 'mere surplusage' unless there is a clear reason for doing so.").

Furthermore, the legislature demonstrated in enacting the 2002 Act that if it wanted the provisions of Chapter 92 of Title 36 to apply to a different statutory scheme to limit the liability of the local government entity, it knew how to do so. Specifically, included in the 2002 Act were revisions to OCGA § 40-6-6, which addresses the use of "authorized emergency vehicles." See Ga. L. 2002, p. 579, § 4. OCGA § 40-6-6 was amended to include a new subsection that provides: "Claims arising out of this subsection which are brought against local government entities, their officers, agents, servants, attorneys, and employees shall be subject to the procedures and limitations contained in Chapter 92 of Title 36." OCGA § 40-6-6 (d) (4). We regard the absence of a similar provision in OCGA § 33-24-51 (a) "as a deliberate

matter of considered choice" by the legislature. *Mauk v. Pioneer Ford Mercury*, 308 Ga. App. 864, 866 (1) (709 SE2d 353) (2011).

Lastly, we note that "[i]n arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the legislature sought to correct in enacting the new law and the remedy provided therefor." (Citation and punctuation omitted.) *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984). The 2002 Act expanded the circumstances in which the sovereign immunity of local government entities would be waived for incidents involving motor vehicles by enacting a new set of mandatory waiver provisions applicable regardless of whether insurance had been purchased. In this regard, the legislation was remedial in nature, aimed at ending the "inconsistent and often unfair results" pointed out by our Supreme Court in *Cameron*, 274 Ga. at 127 (3). It would be inconsistent with this remedial purpose to interpret the 2002 Act as constricting the scope of a local government's waiver of immunity, which would be the case if we were to construe the 2002 Act as imposing the more restrictive definition of "motor vehicle" in OCGA § 36-92-1 (6) to the phrase "any motor vehicle," which is found in OCGA § 33-24-51 (a) and applies to the second sentence of OCGA § 33-24-51 (b).

For these combined reasons, we conclude that the more restrictive definition of "motor vehicle" found in OCGA § 36-92-1 (6) should not be applied to affect claims under the second sentence of OCGA § 33-24-51 (b). Rather, our precedent, which holds that "any motor vehicle" as used in OCGA § 33-24-51 (a) means any vehicle that is capable of being driven on the public roads and is covered by a liability insurance policy purchased by the local government, remains good law after the 2002 revisions. As the rules of statutory construction dictate, "courts should construe statutes in connection and harmony with existing judicial decisions where possible." *Parker v. Lee*, 259 Ga. 195, 198 (4) (378 SE2d 677) (1989). Our decision is consistent with this rule while at the same time honoring the intent of the legislature, as evidenced by the language, structure, and history of the 2002 Act.

The trial court therefore erred by granting summary judgment to the County on the ground that it had not waived its sovereign immunity under OCGA § 33-24-51. Because the trial court's decision was predicated on the erroneous legal conclusion that "any motor vehicle" found in OCGA § 33-24-51 (a) and applicable to the second sentence of OCGA § 33-24-51 (b) was defined by OCGA § 36-92-1 (6), the court did not apply the proper test for determining whether the County waived its sovereign immunity with regard to the tractor and bush hog Smith was operating at the time of the accident. While the County did not contend that the tractor with attached bush hog was

incapable of being driven on the public roads, the County did make a brief and summary argument in the trial court that its insurance policies did not cover tractors and bush hogs, and that issue has not been fully briefed by all parties on appeal. Under these circumstances, we vacate the grant of summary judgment to the County and remand for the trial court to consider in the first instance whether the terms and coverage provisions of the insurance policies purchased by the County covered the tractor and bush hog operated by Smith. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002); *United Healthcare of Ga. v. Ga. Dept. of Community Health*, 293 Ga. App. 84, 92-93 (2) (d) (666 SE2d 472) (2008).

2. The plaintiffs also contend that the trial court erred in granting summary judgment to Gates on the claims brought against him in his individual capacity on the ground that he was shielded by official immunity. According to the plaintiffs, there is a genuine issue of material fact over whether the County had a departmental policy imposing a ministerial duty upon Gates to contact the work camp and request a service truck to be dispatched when a tractor became stuck.

"Official immunity is applicable to government officials and employees sued in their individual capacities." (Citation and punctuation omitted.) *Stone v. Taylor*, 233 Ga. App. 886, 888 (2) (506 SE2d 161) (1998). Individual government employees are shielded by official immunity from damages suits unless the plaintiff can establish that the official negligently performed a ministerial act or performed a discretionary act with malice or an intent to injure. See *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010).

Undisputedly, Gates did not act with malice or an intent to injure; it follows that the plaintiffs' claims are barred by official immunity unless they came forward with evidence that Gates negligently performed a ministerial act.

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises.

(Citations and punctuation omitted.) *Grammens*, 287 Ga. at 619-620.

See also *Hicks v. McGee*, 289 Ga. 573, 575-576 (1) (713 SE2d 841) (2011). While the question of whether a government employee is entitled to official immunity is one of law that the trial court ultimately must determine, where the relevant facts pertaining to immunity are in dispute, the trial court is without authority to resolve those factual issues on a motion for summary judgment. *Nichols v. Prather*, 286 Ga. App. 889, 896 (4) (650 SE2d 380) (2007). A jury must resolve the factual issues, after which the trial court "determine[s] whether the employee's acts were discretionary or ministerial and, thus, whether the employee is entitled to official immunity." Id.

Here, a factual dispute exists over whether Gates was performing a ministerial or discretionary act. In this regard, the plaintiffs came forward with evidence reflecting the existence of a departmental policy with which Gates was required to comply when a tractor became stuck. Specifically, when questioned by an investigator from the Georgia Department of Corrections on the day after the accident, Gates told him that the "unwritten policy for pulling tractors that were stuck was to contact the facility and request they send the truck and the truck would be used to pull the tractor out." During his deposition, Gates acknowledged that he had made this statement to the investigator.

Gates's statement to the investigator, when construed in the light most favorable to the plaintiffs with all inferences drawn in their favor, would permit the conclusion that Gates had a ministerial duty imposed upon him. "Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." *Grammens*, 287 Ga. at 620. The unwritten departmental policy, as described by Gates, required a work detail supervisor such as Gates to take specified action (call the work camp and request a service truck) in a specified situation (when a tractor became stuck). As reflected in Gates's statement, the departmental policy did not require the work detail supervisor to exercise his judgment or discretion, but rather imposed a ministerial duty. See id. The fact that the policy was not in writing does not change this conclusion. See, e.g., *Joyce v. Van Arsdale*, 196 Ga. App. 95 (395 SE2d 275) (1990) (road superintendent's actions in erecting road barricade were ministerial where county commission instructed him to erect barricade).

It is true that the defendants presented evidence that Gates had discretion over whether to contact the work camp and request a service truck, including testimony from the warden and Gates to this effect during their respective depositions. But Gates's prior inconsistent statement to the investigator constituted substantive evi-

dence, thereby creating a factual dispute over whether a ministerial duty had been imposed upon Gates. See *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 749-750 (5) (557 SE2d 76) (2001).

The defendants rely upon *Parrish v. State of Ga.*, 270 Ga. 878 (514 SE2d 834) (1999), which held that a supervisor of a prison work detail was exercising a discretionary function entitling him to official immunity. The facts of *Parrish*, however, are readily distinguishable from the present case. In *Parrish*, the plaintiff victim was assaulted by two prisoners who had escaped from a work detail. As pointed out in the Court of Appeals' decision before the grant of certiorari to our Supreme Court, the plaintiff relied upon state regulations requiring an officer to keep medium security prisoners "under constant supervision when they are outside the prison" in arguing that the officer who had supervised the escaped prisoners had breached a ministerial duty. See *Parrish v. Akins*, 233 Ga. App. 442, 443 (1) (504 SE2d 276) (1998). As our Supreme Court indicated, a correctional officer was required to exercise discretion in carrying out such a generalized duty, and thus could not be said to be performing a mere ministerial function. See *Parrish*, 270 Ga. at 879-880. Such a generalized duty, however, is a far cry from the specific departmental policy described by Gates in the present case.

In sum, we conclude that a genuine issue of material fact exists over whether the County had an established departmental policy requiring Gates to contact the work camp and request a service truck when a tractor became stuck. A jury must resolve this factual issue, and then the trial court can determine whether Gates's acts were discretionary or ministerial in nature, and thus whether he is entitled to official immunity. See *Nichols*, 286 Ga. App. at 896 (4). Therefore, we reverse the trial court's grant of summary judgment to Gates on the claims brought against him in his individual capacity.

*Judgment reversed in part and vacated in part, and case remanded with direction. Adams and Blackwell, JJ., concur.*

DECIDED SEPTEMBER 1, 2011 —

*Michael L. Neff, George B. Spears*, for appellants.

*Willis, McKenzie, DeGennaro & Alford, Mark L. DeGennaro, Freeman, Mathis & Gary, Donald J. Grate, Joshua B. Portnoy, Weinberg, Wheeler, Hudgins, Gunn & Dial, John K. Train IV*, for appellees.